## ALLAN B. WRISLEY CO. v. IOWA SOAP CO. et al.

(Circuit Court, S. D. Iowa, E. D.    September 29, 1900.)

No. 231.

1. UNFAIR COMPETITION—SIMILARITY OF NAME.

Complainant and its predecessor in interest had for many years manufactured and sold a soap under the name of "Old Country Soap," which was used as a trade-mark. Defendant commenced the manufacture and sale of a soap under the name of "Our Country Soap." The boxes in which defendant shipped its soap and the wrappers around the bars were dissimilar from complainants in the printed matter thereon and in the color of the lettering, and each, as well as the bars themselves, contained defendant's name and address, which did not resemble complainant's. The bars of each party, while similar in color and general appearance to those of the other, had stamped upon one side the name of the soap, and on the other the name of the maker. *Held,* that the mere similarity of name, in view of the other facts, was not sufficient to constitute unfair competition, it not appearing to be such as to deceive a buyer of ordinary intelligence and observation into buying defendant's soap for that of complainant.[1]

2. TRADE-NAMES—PROTECTION IN EQUITY—USE FOR PURPOSE OF DECEIT.

A complainant using the name of "Old Country Soap" on a soap manufactured in the United States for the purpose of inducing persons who came to this country from Europe to believe such soap was made in the "old country," is not entitled to protection in the use of such name as a trade-name by a court of equity.

In Equity. Suit for infringement of trade-mark and unfair competition. On motion for preliminary injunction.

Taylor E. Brown, for plaintiff.
W. E. Blake, for defendants.

McPHERSON, District Judge. This is an application for a temporary injunction, and comes to this court by reason of diverse citizenship and the amount involved. Complainant shows that it is engaged in the manufacture of laundry soap at Chicago, Ill., and that it is the successor in business to one Allan B. Wrisley, who established his business in Chicago in 1862, and that more than 20 years ago he adopted as a trade-mark for his laundry soap the word symbol "Old Country," and that plaintiff corporation is still engaged in that business, and uses said trade-mark. It further alleges that said soap is of good quality, and has a splendid reputation as such, and is in great demand. The plaintiff further alleges that it has complied with the statutes of the United States pertaining to trade-marks, and that its rights are covered by certificate No. 29,285, of date December 8, 1896, and complains that defendant is not only infringing upon its rights in the manufacture and sale of the soap, but that defendant is guilty of unfair competition.

The pleadings and the evidence, including exhibits, show that plaintiff and its predecessor, Mr. Wrisley, have been manufacturing and

[1] Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.

selling said soap in Chicago for more than 20 years, and that said soap has acquired the name of "Old Country Soap," sometimes "Country Soap," and sometimes "Old C Soap," and that defendant is manufacturing and selling, and has been since some time in the year 1898, a soap called "Our Country Soap."

It would be academic, and a display of assumed learning, to quote from many of the authorities. I content myself by referring to but one or two cases. Pittsburg Crushed Steel Co. v. Diamond Steel Co., 61 U. S. App. 22, 89 Fed. 706, 32 C. C. A. 324.

This case is by the circuit court of appeals from this circuit. The rule, as stated in that case by Judge Sanborn, is not only a clear statement of the rule as found in the many cases with which the books abound, but, of course, is binding on this court. It is there said:

"Every suit of this character is founded on the fact that the action, or proposed action, of the defendant has deceived, or is calculated to deceive, ordinary purchasers buying with usual care, so that they have purchased, or will probably purchase, the goods of the defendant under the mistaken belief that they are those of the complainant, to the serious damage of the latter. The deception, or probable deception, of the ordinary purchaser to such an extent that he buys, or probably will buy, the property of one manufacturer or vendor in the belief that it is that of another, is a sine qua non of the maintenance of such a suit, because every one has the undoubted right to sell his own goods or goods of his own manufacture as such, however much such sales may diminish or injure the business of his competitors."

And much more of like import is found in the opinion in that case. The foregoing is a correct statement of the rule. One person shall not be allowed to go out in channels of trade, and represent himself to be the person of the complainant, and on the reputation of complainant sell his (defendant's) goods. And it is equally unfair, and as much a wrong, for a defendant, by the adoption of symbols, labels, wrappers, packages, and names, to go out into the channels of trade, and lead consumers to believe that his goods are the goods of complainant. But, short of this, the man first in business or manufacturing cannot stifle all other trade, and control the entire market.

There is nothing more in the law of infringement of trade-marks or unfair competition as applicable to this case. Believing the foregoing to be the law, nothing remains but to apply the facts of the case to the law.

Both parties shipped their soap, from their respective places of manufacture, to the trade, in pine boxes of about the same size. On complainant's boxes are the words, "Allan B. Wrisley Old Country Soap. 479, 481, 483 Fifth Ave., Chicago," which words are in large blue lettering.

Defendant's boxes are marked on one side, in large black letters, "Our Country's Soap, Manufactured by Iowa Soap Co." On the other side, in red letters, is a guaranty, and then "Iowa Soap Co., Burlington, Ia."

The bars of soap in each case are supposed to be one pound, and are of about the same size. Plaintiff's bar of soap is marked "Allan B. Wrisley, Chicago," in letters cut in the soap on a smooth surface on the bar. On the other side "Old Country Soap" lettered in the same way.

Defendant's soap is lettered on one side "Our Country Soap," and on the other "Iowa Soap Co., Burlington, Iowa." The said lettering on both sides is in a panel cut out of the soap.

Plaintiff's wrapper around each bar of soap has in large blue lettering as follows: "Allan B. Wrisley's (Trade-Mark) Old Country Soap. Allan B. Wrisley." His address or place of manufacture is not given on the wrapper.

Defendant's wrapper, on one side, in large red letters on a blue field, in part of an American eagle, is "Our Country's Soap." On the other side, "Iowa Soap Co., Manufacturers, Burlington, Iowa." Also a lot of blue stars.

The soap of each party is yellow, defendant's being a deep yellow and plaintiff's a light yellow; but the bar soap of plaintiff in evidence is apparently an old one, and I suspect that in bars each of the same age they would be more alike in color, and yet this is mere surmise. Such is a description of the boxes in which the soap is shipped, the wrappers around the soap, and the soap itself, and the lettering both on the bars of soap and on the wrappers and on the boxes.

Plaintiff's soap is called "Old Country Soap"; defendant's soap is called "Our Country's Soap." Plaintiff has been in the business of manufacturing and selling "Old Country Soap" for a time long prior to the time defendant commenced to manufacture and sell its soap.

So the question of fact is, would a person of ordinary intelligence be misled into buying defendant's soap when wanting the soap of plaintiff?

The affidavits show that in a few isolated cases parties have asked for plaintiff's soap, and have received defendant's. But the affidavits show that these were few in number, and in most of the instances, in my opinion, were bought by parties seeking evidence for this case, and by parties who were playing detective, and not the legitimate result of actual trade. The affidavits are very unsatisfactory as to these isolated cases, but my judgment is that neither from the sight, nor from the sound of the names, of the soap could any person of ordinary intelligence be misled into buying the one, supposing he was buying the other soap.

Justice Brewer covers this matter in a case in the circuit court of appeals from this circuit so much better than I can that I refer to what he says. Lorillard Co. v. Peper, 57 U. S. App. 565, 86 Fed. 956, 30 C. C. A. 496.

This was a contention over tobacco packages. The plaintiff's tobacco was called "Tube Rose"; defendant's tobacco was called "True Smoke." Both packages were alike in form. The labels on each were made of red and blue lettering, but the lettering was different in size. But both plaintiff's and defendant's packages contained the two following sentences: "Notice. The manufacturer of this tobacco has complied with all requirements of law," and "Every person is cautioned under the penalties of law not to use this package for tobacco again." These two sentences in one case were in blue lettering and the other a dull yellow.

Justice Brewer, in writing the opinion, among other things, said:

"The question is whether, taking defendant's package and label as a whole, it so far copies or resembles plaintiff's package and label that a person of ordinary intelligence would be misled into buying the one supposing he was buying the other. The elaborate descriptions of the points of resemblance or those of difference are, taken by themselves alone, always unsatisfactory. The eye at a glance takes in the whole of one exhibit and the whole of another, and the comparison thus made of the two is the surest and the only satisfactory way of satisfying the judgment as to the existence of the alleged deceptive imitation. * * * No one who is looking for Lorillard's tobacco could for a moment be deceived into believing that this was that tobacco. There is no similarity between the names. Neither the number of syllables nor the number of letters is the same, and there is only one letter in the two names alike. The other principal mode of identification is the name under which the article passes, and herein the difference between the two names, although perhaps not so pronounced, is still marked and obvious. 'Tube Rose' and 'True Smoke,' when spoken, do not sound alike, and do not suggest the same idea; and while, considering the number of letters and the letters themselves, there is more of similarity than between the names of the manufacturers, yet the contrast between the two is apparent at a glance. * * * Summing it all up, while there are certain minor points of resemblance which have been forcibly urged upon our attention by counsel for the plaintiff, yet, looking at the two packages with their labels, it appears it is clear that they are so essentially different that no one of ordinary intelligence desiring to buy the one kind of tobacco would be misled into buying a package of the other."

When speaking of the evidence that tended to show that some parties had made purchases of defendant's tobacco believing it plaintiff's, and that some witness had testified to such sales, Justice Brewer said:

"We cannot surrender our own judgment in this matter because others may be of a different opinion, or because it happens in isolated instances that some person was so careless as not to detect the difference. It may well be that, where many sales were made, some individuals, not particularly attentive, may have purchased the defendant's supposing they were purchasing the plaintiff's package. Such things will happen in the ordinary course of business, no matter how great the differences; and the fact that they have happened, while it is not to be ignored, is not to outweigh the evidence which comes from a personal inspection of the packages and labels."

I cannot understand how any one could be misled or deceived into buying defendant's soap believing he was getting that of plaintiff. A child who could not read would readily discern the difference, not only as to the box for shipment, but the wrappers around the soap, and the soap itself; and, if the child wanted the one soap, he could not be easily deceived into buying the other. In my opinion, there is no such resemblance either in box or in wrapper, or in the soap, or in name, as to deceive a child, to say nothing of a person of ordinary intelligence,— the test urged by Justice Brewer.

There is another matter that ought, in my opinion, to defeat the right of plaintiff to the injunction herein.

The plaintiff corporation, in order to confer jurisdiction upon this court, alleges that it is a citizen of the state of Illinois.

It could do this only upon the conclusive presumption of law that every stockholder is a citizen of Illinois. It was admitted in the argument by counsel for complainant that Allan B. Wrisley is an American citizen, residing at Chicago, Ill., and that the corporation comes before the court with a soap by the name of "Old Country Soap." I have no doubt whatever that the purpose of plaintiff is to make the

people in a German community believe that its soap is manufactured in Germany, or at least from a recipe coming from that country; and in an English community that it is a soap manufactured in England, or at least from a recipe coming from England; and so on in all other communities having a foreign population. One of plaintiff's advertisements, used in the argument by consent of parties, tends to show that such is plaintiff's purpose, and yet the fact is that plaintiff's soap is made in Chicago, Ill., and is manufactured by an Illinois corporation, as successor of Mr. Wrisley, an American citizen.

The long and short of this matter is that complainant comes into court upon proof that tends to show that it is practicing a deception, and has been for years. On defendant's box, and on defendant's wrappers, and on defendant's soap the fact is made known that the soap is manufactured at Burlington, Iowa, and the very name indicates that the soap is American soap.

Plaintiff does not come into court with the right to maintain its action in thus practicing this deception.

So I find and conclude that there is no such similarity, either in the name or appearance of the soap, or appearance of the wrappers, or appearance of the boxes, as to warrant the conclusion that plaintiff's trade-mark has been infringed upon, or that defendant is guilty of unfair competition.

And for both reasons hereinbefore set forth the plaintiff should not have a temporary writ of injunction, and the same is denied.