DE LONG HOOK & EYE CO. v. FRANCIS HOOK & EYE & FASTENER CO.

(Circuit Court, W. D. New York. June 26, 1905.)

1. UNLAWFUL COMPETITION—EQUITY—MISLEADING MISREPRESENTATIONS.

Where the printing on the back of complainant's card containing hooks and eyes did not claim that the hump feature was patented, but merely directed attention to complainant's articles by referring thereto as the "De Long Patent Hook and Eye," and contained a sketch thereof, with an index line pointing significantly to the hump or a spring tongue of the hook, such reference to a patent, which had been held invalid except as to the triple band of spring wire to strengthen the hook, did not constitute such a deception of the public as precluded complainant from relief in a court of equity against unfair competition.

2. SAME—DRESS OF GOODS—CARDS—SIMILARITY.

Where cards used by complainant and defendant, containing competing hooks and eyes, which were attached thereto by thread, were substantially the same in size, color, and form, and, though the words printed on defend-

ant's card were different, the style, printing, spacing, etc., were made to simulate complainant's card as closely as possible, and defendant later simulated complainant's mode of fastening the invisible eyes to the card, though stitched in a different manner, defendant was guilty of unfair competition.

[Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trade-Marks and Trade-Names, § 81.]

See 118 Fed. 938.

Stern & Rushmore (Charles E. Rushmore and William C. Strawbridge, of counsel), for complainant.

Macomber & Ellis (Tracy C. Becker, of counsel), for defendant.

HAZEL, District Judge. This action is brought to enjoin the defendant from selling and exposing for sale hooks and eyes stitched upon cards together with what are known as "invisible eyes," and which cards bear letters, words, and pictures arranged in simulation of complainant's previously adopted method of introducing its commodity to the trade. Complainant claims that the defendant placed its merchandise upon the market in a form calculated to mislead the ordinary purchaser into the belief that its goods were those of complainant. Although complainant also used upon its cards the registered trade-mark, "See that Hump," in connection with the name "De Long," this action is simply for unfair competition in trade. The defendant challenges complainant's asserted exclusive right to use the style of dress adopted for its commodity, denies an intention to defraud, and alleges that complainant has persistently practiced a deception and fraud upon the public by falsely advertising its ownership of the patent upon a hook which has a so-called spring tongue or hump. In other words, the defendant claims that the complainant falsely and fraudulently advertised in newspapers, periodicals, and show cards in such manner as insiduously to mislead the public into believing that the hump feature of the hook (hereinafter referred to with more particularity) was a patentable invention conceived by complainant's predecessor. The rule is invoked that he who seeks the aid of a court of equity in trade-mark cases to enjoin infringement must not himself be guilty of false or misleading representations in respect to such trade-mark, or the business which is the subject thereof. Hilson Co. v. Foster (C. C.) 80 Fed. 896; Dadirrian v. Yacubian et al., 98 Fed. 872, 39 C. C. A. 321; Allan B. Wrisley Co. v. Iowa Soap Co. (C. C.) 104 Fed. 548. In this connection the evidence shows that complainant's predecessor obtained a patent on October 1, 1889, for the hump feature of the hook. The validity of the patent was sustained in Richardson v. Shepard et al. (C. C.) 60 Fed. 273. Afterwards, however, the patent was limited to a triple bend or spring wire to strengthen the hook. Richardson v. American Pin Co. (C. C.) 73 Fed. 476. The printing upon the back of complainant's card does not claim that the hump feature is patented, as contended by the defendant, but merely directs attention to complainant's vendible articles by referring thereto as the "De Long Patent Hook and Eye," and contains a sketch thereof, with an in-

dex line pointing significantly to the hump or spring tongue of the hook. This trivial reference to a patent for the hook and eye may not have been strictly accurate, but I am not convinced that it worked a deception upon the public, or wrongfully induced the sale of complainant's merchandise. Hence the evidence in support thereof must be deemed wholly immaterial.

The next point is whether the defendant imitated the complainant's dress for its merchandise in such manner as to practice a fraud and deception upon the ultimate purchaser. A description of the cards upon which the hooks and eyes are stitched is necessary to a proper consideration of the controverted question. The cards of the complainant and defendant containing the hooks and eyes and the invisible eyes, which are attached thereto by thread, were substantially the same in size, color, and form. The exact description of the complainant's slightly modified card adopted in 1893 may be taken from the complainant's brief. The card has printed upon its face the words "See that," printed in the upper panel, and the word "Hump" in the lower panel, and on the bottom space were printed the words "United States and Foreign Countries." On the upper horizontal column were the words, in shaded type, "The De Long Hook and Eye, No. 4." In the upper panel the words "See that." In the middle horizontal column the words "Easy adjustment; Security; Durability." In the second or lower panel the word "hump?" On the bottom horizontal panel, in the left-hand margin, in a heavily shaded space, were the words "Pat. Oct. 1, 1889." The color of the card is white. The type and shading is in black. On the back of the card was a white label, upon which was printed in plain black type the names of the foreign houses where the hooks and eyes could be purchased. The label also contained a sketch of a hook and eye, with a dotted line running to the spring tongue. To the left of the sketch are the words "See that Hump?" the word "Hump" being printed in large black type. The later cards of the complainant have also the words "See that Hump?" printed diagonally across the label, and on its face, between the rows of hooks, is a narrow label containing the words in red, "See that Hump?" The label just mentioned is pasted upon that portion of the card upon which appeared the words "Easy adjustment; Security; Durability" of the earlier cards of complainant.

The proofs show that the "Adelaide" card of the defendant was introduced to the trade in 1898, and was a marked change from its earlier card. The words "The Adelaide Hook and Eye No. 4" are prominently printed upon the upper portion of the card. Running through the upper panel between the hooks, and easily discernible, is the word "Security." In the central horizontal space are the words "Easy Working Self Acting Spring." The type is plain black upon a white background, and it will be noted that the initial letter "S" of the word in the upper panel is the same as that of the word in the same panel of complainant's card, and also that the initial word "Easy" in the central space is the first word used by complainant in the same portion of its card. The word "Comfort"

is printed between the hooks and eyes in the bottom row, in apparent simulation of the word "Hump," printed in the same portion of complainant's card. In the left-hand corner at the bottom is a heavily shaded space containing the words "Rust Proof," and upon the bottom margin of the card are the words "Made in the United States." The shaded space and the words last mentioned are in resemblance of the lower portion of complainant's card. Defendant also has a label on the back of its card, upon which is prominently printed, in plain black type, the word "Adelaide," in simulation of the words "See that Hump?" in complainant's cards. Reference is also made thereon to various houses where defendant's commodities may be purchased, and a sketch of a spring tongue hook is contained in the right-hand corner, with dotted lines indicating the hump of the hook, as in complainant's design.

I have no hesitation in determining that, owing to the general characteristics of the cards, namely the color, style of type, shading, and other details, the arrangement of the hooks and eyes and invisible eyes thereon, and the label, as heretofore indicated, the cards of the defendant are an evident resemblance of those of complainant. The evidence shows that the complainant in March, 1890, placed its hooks and eyes upon the market; and, with some trifling modifications, they have ever since been carded as herein set forth. The method of fastening the invisible eyes upon the cards was adopted by the complainant in 1900. Soon afterwards hooks and eyes carded with an invisible eye of defendant's manufacture appeared on the market. Although the witness Francis testified that the defendant corporation carded the invisible eyes in the form mentioned early in 1901, yet it sufficiently appears that the cards of the complainant with its invisible eyes were then upon the market.

Much evidence was given by defendant tending to show that a number of the elements of complainant's cards were old, and were in prior use for a similar purpose. It is insisted that the method of sewing the hooks and eyes on the cards, the arrangement of printing thereon, the use of shaded type, the custom of pasting labels on the reverse side of the cards, and the practice of using a picture of the hook and eye, with an index line pointing to the hump of the hook, were familiarly known, and that complainant was not the first to use the elements mentioned. True, some of the elements may have been old, but it is not required that the separate details must have been original with a complainant seeking relief from infringement. The question is whether the adoption of the collocated features of the complainant's card and style of dress disclosed a differentiation from that previously adopted, and by which the public has come to recognize the product of complainant. Did the complainant, by its adoption and presentation of the hooks and eyes in connection with the invisible eye, popularize its merchandise and aptly designate it, so that the same became distinctively known? If the complainant had assembled known features without creating a dissimilarity, then no unfairness would be apparent in defendant's adoption of a like dress for its product. That complainant has distinguished its merchandise from that of others engaged in a similar

industry is beyond dispute. That the defendant simulated the distinguishing features of complainant's adaptation is undeniable. As hereinbefore stated, the complainant, since 1900, when the principal features of its cards were adopted, had modified the same. Not only did the defendant closely approach the earlier garb, but later it simulated the complainant's method of fastening the invisible eyes to the card. That such eyes were stitched to the card in a different manner is unimportant.

Little difficulty arises with respect to a decision of the question of fraud and intentional wrongdoing. The rule is stated by Judge Lacombe, speaking for the Circuit Court of Appeals, in Fairbank Co. v. Luckel, 102 Fed. 327, 42 C. C. A. 376, as follows:

"The law is well settled that in suits of this character the intention of the respondent in adopting the style of package, or choosing a name for a similar product, is to a certain extent immaterial. It is not essential to the right of complainant to an injunction to show absolute fraud or willful intent on the part of the respondent. Upon familiar principles, it will be presumed that the respondent contemplated the natural consequences of his own acts. * * * The court must determine the intent from respondent's acts and the results produced thereby."

Scheuer v. Muller, 74 Fed. 225, 20 C. C. A. 161; Von Mumm v. Frash (C. C.) 56 Fed. 830; Lever v. Godwin, 36 Chan. Rep. 1; Fuller v. Huff, 104 Fed. 141, 43 C. C. A. 453, 51 L. R. A. 332; Pillsbury v. Pillsbury-Washburn Flour Mills Co., 64 Fed. 841, 12 C. C. A. 432.

The expert testimony of the defendant that its adopted dress did not deceive the trade or buyers is not entitled to the consideration claimed for it. True, mere similarity, standing alone, is insufficient to prove a wrongful intention to defraud. Fraud in the case at bar is determinable from the similarity of the cards in connection with the defendant's conduct in adopting the "Adelaide" card, in addition to its "Brownies" card, then in use, and later in stitching the invisible eyes to the cards in simulation of complainant's appropriation. R. Heinisch's Sons Co. v. Boker et al. (C. C.) 86 Fed. 765; Scheuer v. Muller, supra. The resemblance need not be such as to deceive persons skilled in the industry to which the commodity belongs. As was said in Fairbank Co. v. Bell Mfg. Co., 77 Fed. 875, 23 C. C. A. 560:

"Undoubtedly no one who bought from defendant was ever deceived. No effort was ever made to delude the trade into the belief that defendant's salesmen were selling complainant's goods. But equity regards the consumer as well as the middleman. It is to him, more than the jobber or wholesale purchaser, that the various indicia of origin with which merchants dress up their goods appeal; and courts will not tolerate a deception devised to delude the consuming purchaser by simulating some well-known and popular style of package."

Lever v. Godwin, supra; R. Heinisch's Sons Co. v. Boker, supra. The complainant has incurred great expense in advertising its wares dressed in the garb mentioned, and that defendant had knowledge of such extended advertising, and of the general descriptive character of the complainant's cards, is admitted. In these circumstances, the rule announced in Waltham Watch Co. v. U. S. Watch

Co. (Mass.) 53 N. E. 141, 73 Am. St. Rep. 263, 43 L. R. A. 826, is apt, and may be quoted:

"Whatever might have been the doubts some years ago, we think that now it is pretty well settled that the plaintiff, merely on the strength of having been first in the field, may put later comers to the trouble of taking such reasonable precautions as are commercially practicable to prevent their lawful names and advertisements from deceitfully diverting the plaintiff's custom."

Other propositions claiming inferentially to show defendant's intention to palm off its goods for those of complainant, and the suggestion of laches in bringing suit, need not be discussed, although they have been considered.

When the motion for injunction pendente lite was decided, I was of the opinion that the essential characteristics by which complainant's goods were introduced to the public solely depended upon the trade-mark, "See that Hump?" which concededly is not infringed by the defendant. The opposing affidavits upon the question of whether there was originality in complainant's adaptation, and whether defendant's cards were calculated to deceive, justified a refusal of the injunctive relief. The right of the complainant against his rival, the defendant, to enjoin unfair competition, was not then as certain and clear as the evidence now establishes.

A decree may be entered, with costs, restraining the defendant from selling or offering for sale any cards upon which hooks and eyes and invisible eyes are stitched, including the "Adelaide" and any similar card, such as the "Astoria," "Niagara," and "Waldorf," and simulation of complainant's particular form of carding its hooks and eyes, which, by reason of the collocation of size, shape, colors, lettering, spacing, shading, and general appearance, resemble the complainant's cards, as hereinbefore described.