## HOLEPROOF HOSIERY CO. v. WALLACH BROS.

(Circuit Court, S. D. New York. January 14, 1911.)

1. TRADE-MARKS AND TRADE-NAMES (§ 3*) — DESCRIPTIVE TERMS — "HOLE-PROOF" HOSIERY.

   The word "Holeproof," as a trade-mark for hosiery, is not invalid as descriptive where it has been used and advertised for such length of time as to have acquired a secondary meaning as designating the product of a particular maker.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. § 3.*

   Arbitrary, descriptive, or fictitious character of trade-marks and trade-names, see note to Searle & Hereth Co. v. Warner, 50 C. C. A. 328.]

2. TRADE-MARKS AND TRADE-NAMES (§ 59*)—INFRINGEMENT.

   The arbitrary name "Knotair," as applied to a make of hosiery, is not in itself an infringement of the trade-mark "Holeproof," previously adopted by another manufacturer.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 68–72; Dec. Dig. § 59.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 70*)—UNFAIR COMPETITION.

   Complainant made and sold hosiery under the trade-mark "Holeproof" in specially designed and colored ·boxes, each containing six pairs, and. when sold by the box, with a guaranty of replacement if holes appeared therein within six months, which was novel and widely advertised. Defendant, which as a dealer had been selling complainant's product. became agent for a different make sold under the name of "Knotair," which it had put up in boxes and with a dress closely resembling those of complainant, and advertised and sold with a similar guaranty, and to customers who called for "Holeproof," although not actually representing it to be such. *Held*, that such acts evidenced an intention to obtain an advantage from the advertising and popularity of complainant's goods. and constituted unfair competition, which would be enjoined.

   [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. § 70.*

   Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity. Suit by the Holeproof Hosiery Company against Wallach Bros. On final hearing. Decree for complainant.

See, also, 167 Fed. 373, and 172 Fed. 859, 97 C. C. A. 263.

Walter C. Booth, Frank F. Reed, and Edward S. Rogers, for complainant.

Gardenhire & Jetmore and Aaron P. Jetmore, for defendant.

HAZEL, District Judge. The bill of complaint alleges unfair competition in trade and infringement of complainant's trade-name "Holeproof" as applied to hosiery. The hosiery sold by the defendant is advertised and sold under the name "Knotair" and is manufactured by the Knotair Hosiery Company. The questions to be considered are, first, whether the complainant's trade-mark or device is descriptive merely and as applied to hosiery not the subject of a valid trademark, and, second, whether the defendant by its trademark, packages and accessories infringes those of complainant.

[1] The facts are not thought essentially different from those presented on the motion for preliminary injunction herein. Judge Hough in his decision and as an introductory thereto so fully and concisely detailed them that their extended recital is unnecessary here. Holeproof Hosiery Co. v. Wallach Bros. (C. C.) 167 Fed. 373. On appeal from said decision the Circuit Court of Appeals for this court held that the word "Holeproof" was not descriptive, and that by extensive advertising and large sales it has acquired a secondary meaning "indicating to the prospective purchaser, not that the socks sold under it are indestructible, but that they are those which complainant has been making and supplying to consumers, apparently to their entire satisfaction." Holeproof Hosiery Co. v. Wallach Bros., 172 Fed. 859, 97 C. C. A. 263. Such holding as to the asserted descriptiveness of the trade-name or design is the law of this case, which this court is bound to follow.

[2] In my judgment the arbitrary name "Knotair," used in connection with the sale of hosiery without the similarities in dress of the defendant's package to that of complainant, would not delude the unwary buyer. The defendant corporation has shown that "Knotair" hosiery is the distinctive trade-name or device by which its socks are placed on the market, and that such socks have become known to the public by such designation. The word "Knotair" differs in appearance and pronounciation from the word "Holeproof," and it cannot be presumed that the defendant simply in using its trade-mark or device practiced a fraud on the public or on complainant's customers. Certainly "Knotair" printed on packages containing hosiery and upon slips or coupons colored or printed in a different manner from those used by complainant could not be held to resemble the trade-mark or design or dress of complainant's product. The trade-marks "Holeproof" and "Knotair" doubtless convey the same idea or purpose, namely, that holes or tears will not readily appear in the socks from wear, but this resemblance, standing alone, is without controlling significance in view of the fact that the word "Holeproof" is not strictly imitated by the word "Knotair" in such manner as to deceive the unwary purchaser who wishes to buy socks of complainant's manufacture and guaranty.

[3] Proceeding to a discussion of the question of unfair competition, does the trade-mark or design "Knotair," used in connection with the style or color of package, printing, type, and coupon tickets, resemble the complainant's package of guaranteed socks so as to enable the defendant to palm off its goods on intending purchasers of the complainant's product? The evidence shows in my estimation that the defendant in adopting its packages and coupon slips together with the collocated elements, the color of the package, flaps and the phrasing of the guaranty tickets, intended to deceive the unwary buyer into believing that he was purchasing the guaranteed hose of complainant. It appears that in 1898 complainant originated a novel system by which its socks were sold in six pair lots, under a printed guaranty stating that, if holes appeared in the socks within six months of the time of purchase, another pair would be given gratis to the

buyer. On each box the trade-mark "Holeproof" was printed prominently and the guaranty tickets inclosed therein. Afterwards, in 1904, the manufacturer of complainant's hosiery devised a special package for its product, consisting of an oblong box of bright yellow color, with printed end and side flaps. Upon the cover of the box there is placed a circular trade-mark device containing the words "Holeproof Hosiery," and underneath the monogram, "H. H. C." Around each pair of socks a paper band was placed with the trade-mark device printed thereon, and inclosed in the box were duplicate guaranty slips printed on a strip and so perforated as to enable tearing off each slip when necessary. Printed instructions advising purchasers how the guaranty strips were to be used were also inclosed in the box containing the hose. The garb and dress for its hosiery were unusual and distinctive, and complainant expended large sums in advertising "Holeproof" socks and the adopted form of guaranty and dress for its commodity. The trade-name or design "Knotair" was adopted by the manufacturers of the hose sold by the defendants in 1906, and the packages containing them were of red color, or such color as the dealer or jobber might designate. Subsequently, in 1908, the defendant who was in business in the city of New York, and had been dealing in "Holeproof" socks, buying them from complainant, accepted the agency of the "Knotair" hosiery, and immediately it began advertising the sale by it of "Knotair" hosiery under the guaranty plan. The red packages or boxes were abandoned, and in their place yellow packages with lettering in prominent black and red type and white label was adopted. Flaps were put inside the boxes to resemble complainant's arrangement, the trade-mark "Knotair" printed in red, the duplicate coupon slips printed and colored as in complainants. In this situation it is not thought enough to avoid infringement that the defendant admonished its employés not to substitute "Knotair" socks for "Holeproof." The evidence indicates that by mere silence in answer to the request of the unwary purchaser for "Holeproof" socks and by simply placing before him a package of "Knotair" socks he is liable to be deceived; and, indeed, by innuendo or indefiniteness of language, a clever salesman may easily palm off "Knotair" socks for those of complainant if such were his intention. Such in my estimation is the resemblance in dress of the defendant's hosiery to that of complainant. The intention of the defendant to reap a gain from the popularity of complainant's goods or from their extensive advertising or the novelty of its plan is clearly perceivable. It is well settled in this country and in England that a man who wants to sell or advertise his goods, if they have not been sold or advertised before, must distinguish them from those of other manufacturers and dealers in a like commodity. The situation in the present case peculiarly required that the defendant with honest intention should place its goods upon the market by distinctive marks and packages, and such as would not render it open to the charge of deceiving the ordinary purchaser who may desire to purchase the product of complainant, and who, it is quite likely, may merely look at the oblong yellow package, the printed

matter, and the yellow guaranty slips by which the hosiery of the complainant became known to him and the public.

There is no force in the defendant's contention that complainant's witnesses who were its employés and made purchases of defendant's socks while asking for "Holeproof" socks were not deceived, and therefore it is not affirmatively shown that there was a probability of purchasers being defrauded or that the defendant intended to mislead. The manner in which the sales in most instances were consummated, together with the adopted dress in resemblance of complainant's dress, warrants the inference that fraudulent sales were intentionally made. Fairbank Co. v. Bell Mfg. Co., 77 Fed. 869, 23 C. C. A. 554; Delong Hook & Eye Co. v. Francis Co. (C. C.) 139 Fed. 146.

It is true the complainant can have no monopoly of guaranteed hosiery or of slips containing a guaranty to replace socks that become torn within six months, nor can the defendant be concluded to use the words "Guaranteed Hosiery," but the adoption of complainant's colored package, the color and arrangement of its coupons, and printed matter, the style of printing, in short, the peculiar appearance, dress, or combination of elements used by the complainant, is a wrongful act, and preventable by a court of equity.

The complainant may have a permanent injunction and decree in conformity with this decision, with costs.