DE NOBILI v. SCANDA.

(District Court, W. D. Pennsylvania. July 6, 1912.)

No. 33.

TRADE-MARKS AND TRADE-NAMES (§ 84*)—VALIDITY OF TRADE-MARKS—NON-RESIDENT ALIENS—UNFAIR COMPETITION.

Complainants, who were all citizens and residents of Italy, as partners, established a cigar factory in the United States, adopting a label for their boxes and also a trade-mark, which they registered under Act Feb. 20, 1905, c. 592, §§ 1, 2, 33 Stat. 724 (U. S. Comp. St. Supp. 1911,

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

p. 1459). The label was printed almost entirely in Italian, and did not show where the cigars were made; but a cut of a building thereon showed a sign in English giving the firm name of complainants, with the words "Italian Cigar Manufacturers." *Held*, that complainants were not entitled to the protection of a court of equity against infringement of their trade-mark or unfair competition by simulation of their label by a citizen of the United States, first, because, the manufacture of tobacco being a government monopoly in Italy, neither complainants nor an American citizen could secure a similar trade-mark in that country, which was essential to a valid registration of their trade-mark under the statute; second, because their label was calculated to deceive purchasers into the belief that their cigars were made in Italy; third, because upon the building shown in the cut on the label there were two Italian flags, which, under section 5 (b) of the statute would render it ineligible to registration as a trade-mark, and, as evidenced by such provision, contrary to the public policy of the United States.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 93, 97; Dec. Dig. § 84.*

Unfair competition in use of trade-marks and trade-names, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

In Equity. Suit by Prospero De Nobili, on his own behalf and on behalf of others, against Joseph S. Scanda. On final hearing. Decree for defendant.

Stonecipher & Ralston, of Pittsburgh, Pa., for plaintiff.
A. H. Wanner, of Pittsburgh, Pa., for defendant.

ORR, District Judge. This matter comes before the court for final hearing. The bill is filed by Prospero De Nobili, for himself and about 40 others, who are not named, who are engaged as partners under the name and style of Prospero De Nobili & Co. in the manufacture of cigars and tobacco, to restrain the defendant, Joseph S. Scanda, who is also engaged in the manufacture of cigars, from using a trademark, labels, packages, and boxes like those of the plaintiffs. The evidence discloses the following facts:

The plaintiff and his associates are all residents of Italy and citizens of that foreign country. Near the close of 1906, or early in 1907, they began the manufacture of cigars at Long Island City in the state of New York. They adopted a trade-mark and duly registered the same in the United States Patent Office on January 18, 1907. That trade-mark consists of a circle having inclosed therein the initials of the firm and having upon its outer circumference, immediately above the initials, the Roman symbol of the wolf suckling Romulus and Remus. The said trade-mark appears upon the plaintiffs' label, which label is intended to be applied so that the trade-mark will appear at the end of the plaintiffs' box of cigars. The defendant uses upon his label a design different from the trade-mark of the plaintiff in some respects. Instead of a circle, the defendant uses a diamond-shaped parallelogram, within which are the defendant's initials and upon which is the Roman symbol of the wolf and children. These devices are by no means the important features of the labels used by the parties.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The distinction pointed out in these designs is, however, one of the most noticeable differences between the labels of the plaintiff and that of the defendant. The label adopted by the plaintiff is straw-colored, upon which appear designs and printing in the making of which five or more different colors are used. To one not accustomed to careful discrimination, the label of the defendant would be mistaken for that of the plaintiff. A mistake might be made in the purchase of the defendant's cigars for those of the plaintiff, not only from the similarity of the labels, but from the marked similarity of the boxes upon which the labels are respectively placed, and also from the fact that the cigars inside of the boxes are packed in the same way.

From all the evidence the conclusion must be found that the defendant, who had been in the business of manufacturing cigars for a number of years, first used the label now placed by him upon his cigars after the plaintiff had begun to place his cigars upon the market. The defendant is not sufficiently clear in his testimony as to the time of the adoption of the designs, labels, and boxes used by him to even raise a doubt in the mind of the court that he has sought by unfair means to avail himself of the growing demand for the plaintiff's cigars by simulation intended to lead consumers to the belief that his cigars were the same as the plaintiff's. If there were nothing else in the case, the plaintiff would be entitled to a decree and an injunction as prayed for.

It appears, however, that while the plaintiff is claiming that the defendant is deceiving the public, he himself may not be wholly free from a similar charge. That portion of plaintiff's label which is placed upon the top of the boxes containing cigars, so far as it appears without a most careful examination, is all in Italian. The only portion which does not appear to be in Italian is upon one of two signs on the red building inclosed within an ellipse. On that sign appears:

Prospero De Nobili & Co., Italian Cigar Manufacturers.

Upon the other sign upon said building appears:

Prospero De Nobili & Co., Manifattura di Sigari Italiana.

Above the ellipse appears:

100
Prospero De Nobili & Co., Manifattura di Sigari & Tabacco.

And below the ellipse:

Pierce Ave. and Hamilton St., L. I. C.
Sigari a foggia Napoletani.
Cento.

There is another label in litigation in this case like the one just above described, differing, however, from that one in that the word "Toscani" appears on it in place of "Napoletani." The Toscani and Napoletani are names given to certain shapes of cigars, and the labels are used with respect to the different shapes as the case may be.

At the time these labels were first used by the plaintiff there appeared upon the building an American flag, and as well, also, on either

side of the American flag, an Italian flag. But for some years past the American flag has been blotted out, so that there appears to be a flag of deep blue or black only. The Italian flags still remain. There is nothing upon the upper part of the label, or the side of the label, or on the box, to indicate the place of manufacture of the cigars. On the upper part of the box there is, of course, the factory notice required by the act of Congress, upon which appears the statement that the cigars are from factory No. 409, First district, New York. It is true the words "Pierce Ave. and Hamilton St., L. I. C.," when explained by the testimony, are the English names of streets in America, with an abbreviation of the city in which the streets are located. But an ordinary consumer of a cheap cigar, such as are sold by both parties to this suit, would not have anything to show that the cigars were not made in Italy, unless he turned the box upside down. The cigars sell at retail at two cents apiece, and therefore would be consumed by a man of limited means and intelligence. The plaintiff explains that his use of the term "Italian Cigars" is not intended to convey the impression that the cigars are made in Italy, or that they are made of Italian tobacco. The tobacco, according to the evidence, is grown in Kentucky. The cigars, he says, are made according to the Italian process. One of the witnesses states that they used the name "Italian Cigars" to distinguish their cigars from Havana cigars and American cigars. It appears, also, that the government of Italy has an exclusive monopoly of tobacco and the tobacco industry in Italy and that there is some tobacco raised in Italy. Plaintiff does not disclose what the Italian process is in detail, but asserts that he is manufacturing his cigars according to the process used by the Italian government. He is doing in this country, therefore, what American citizens cannot do in Italy.

Plaintiff insists that none of his consumers can be misled by his label, because his cigars are intended for the Italians living in this country, are consumed in this country by Italians alone, and that all Italians know that Kentucky tobacco is used by the Italian government in the manufacture of cigars, and that there are no cigars exported from Italy to this country. I am satisfied that the plaintiff should not be permitted to maintain this action. We have the fact hereinabove mentioned as to the citizenship and residence of the plaintiff and his associates. While residents of Italy, where they cannot carry on the business they are now engaged in, they establish a factory in this country to cater to a particular class of people, and mark their wares in such a way as to deceive purchasers, who may or may not be of the class intended by them as the consumers of their product.

In 1881 Congress passed an act (Act March 3, 1881, c. 138, 21 Stat. 502 [U. S. Comp. St. 1901, p. 3401]) to authorize the registration of trade-marks, to protect the same, which extended only to owners of trade-marks who were domiciled in the United States, "or located in any foreign country or tribes, which by treaty, convention or law afford similar privileges to the citizens of the United States." On June 1, 1882, the trade-mark declaration with Italy was signed, wherein it was recited that the contracting parties, "wishing to provide for

the reciprocal protection of the marks for manufacture and trade, have agreed as follows: The citizens of each of the high contracting parties shall enjoy in the dominions and possessions of the other the same rights as belong to native citizens, or as are now granted or may hereafter be granted to the subjects or citizens of the most favored nation in everything relating to property in trade marks and trade labels." Act Feb. 20, 1905, c. 592, 33 Stat. at Large, 724 (U. S. Comp. St. Supp. 1911, p. 1459), authorizing the registration of trade-marks, contains provisions similar to those found in the act of 1881, supra. This is observed in section 1 of said act. In section 4, which relates to the rights of foreign registrants, there is provision for the registration of trade-marks in this country by persons who have previously "filed in any foreign country, which by treaty, convention or law affords similar privileges to citizens of the United States." Indeed, in all the acts of Congress on the subject, since the act of 1881, it seems that residents of foreign countries should have the right of protection for their trade-marks in the United States only where citizens of the United States could have protection for their trade-marks in the countries in which they were respectively citizens and residents.

In view, therefore, of the evidence in this case and of the legislation upon the subject, there seems to be no equity on the part of the plaintiff and his associates, citizens and residents as they are of Italy, to cause this court to restrain the defendant, who is a citizen of the United States, from the use of plaintiff's trade-mark. Nor does the lack of equity relate to the trade-mark alone, but also to the label upon which it is used, for the rights of a manufacturer to the enjoyment of both are the same. The definitions of a trade-mark are collected in section 2 of Hopkins on Trade-Marks, note 3. The author of that work, however, has taken the several decisions and therefrom gives the following definition:

"A trade-mark is a distinctive name, word, mark, emblem, design, symbol or device used in lawful commerce to indicate or authenticate the source from which has come, or through which has passed, the chattel upon or to which it is applied or fixed."

A label is usually much broader in its information than a mere trade-mark; but a label, to be the subject of litigation in a case of unfair competition or trade must "indicate or authenticate the source from which has come, or through which has passed, the chattel upon or to which it is applied or fixed."

There is another phase of this question, arising from the use of the flags upon the red building contained within the oval upon the label. The act of February 20, 1905, authorizing the registration of trade-marks, in section 5, provides:

"That no mark by which the goods of the owner of the mark may be distinguished from other goods of the same class shall be refused registration as a trade-mark * * * unless such mark * * * (b) consists of or comprises the flag or coat of arms or other insignia of the United States, or any simulation thereof, or of any state or municipality, or of any foreign nation," with other provisions not necessary to be considered.

That provision appears again in the act of 1907 (34 Stat. at Large, 1251), and is the law to-day; as it was before the trade-mark and label of the plaintiff was devised and used.

It has been seen that there were originally on the plaintiff's label a flag of the United States and two flags of Italy, or simulations thereof, on either side, and that since the obliteration of the flags of the United States, as above stated, there still remain the two flags of Italy. It is true, they are small as compared with the other features of the label; but it cannot be said that the label does not comprise those Italian flags. Lexicographers state that the word "comprise" means "embrace" or "include." Under the law, therefore, the design of the label could not be registered as a trade-mark, because it comprises a flag of a foreign nation. If it could not be registered as a trade-mark for that reason, we see no reason why it should be protected as a label. The policy of the law, as indicated by the statutes above mentioned, recognizes the impropriety of using the flags of nations upon advertising matter, and the court is of the opinion that the policy of the law ought to be considered in this case as having more or less weight against any equity in favor of the plaintiff which may exist by reason of other considerations. Again, a wholly foreign label upon goods manufactured in America from American natural products ought not to be encouraged in this country. It is true the plaintiff says that his goods are intended for the Italians in this country, and that the consumers will not be deceived; but a manufacturer of American goods is not entitled to protection in a court of equity for a label which would deceive any portion of the population of the United States. This is not a country made up of Italians and of people from other nations, but is composed of American people using the English language. To encourage home manufacturers for the people of one alone of the nationalities represented in the United States should not be required of a court of equity. Nothing should be encouraged which tends to foster divers national distinctions among those intending to become a part of the whole body of the people.

The conclusion, therefore, is that in spite of the unfair competition on the part of the defendant in the similarity of the trade-marks, labels, and packages, the plaintiff, for the reasons stated, has no standing in this court for the relief demanded. The bill must be dismissed, at his costs.