## CAMPANA CORPORATION v. GLANZBERG et al.
### No. 7877.

District Court, E. D. Pennsylvania.
April 8, 1935.

George I. Haight and Ward Ross, both of Chicago, Ill., and Joseph S. Conwell, Jr. (of Pepper, Bodine, Stokes & Schoch), of Philadelphia, Pa., for plaintiff.

T. Fred Woodley, of Bangor, Pa., and Zachary T. Wobensmith, 2d, and James C. Wobensmith, both of Philadelphia, Pa., for defendants.

KIRKPATRICK, District Judge.

This is a suit in equity to restrain trade-mark infringement.

The trade-mark claimed was registered November 1, 1927, and consists of the words "Italian Balm." The plaintiff's second and third registrations are unimportant in this suit. The defendant originally used a label sufficiently like the plaintiff's to be objectionable as constituting unfair competition, but has discontinued it, and that phase of the case need not be considered. The defendant sells its product under the name of "Madame Duval's Italian Balm," and there is no evidence, apart from the use of the words "Italian Balm," that the defendant is now trying to sell its goods as the plaintiff's.

At the hearing, the defendant offered no evidence, and the case therefore turns entirely upon the extent of the plaintiff's rights.

Some time prior to the year 1885 a druggist in Toronto, Canada, began to manufacture and sell a hand lotion which he called Campana's Italian Balm. Some sales were made in the United States. The lotion continued to be sold under that name by him and his successors in a comparatively small way until 1926, when the plaintiff acquired the formula and all rights to the trade-mark, trade-name, or goodwill, and began to manufacture the product at Batavia, Ill., at

which place the business has been carried on to the present time.

The plaintiff has spent an enormous amount of money in advertising its product, and induced the public to buy in great quantities at high prices. The plaintiff's advertising has been carried on through newspapers, magazines, and trade journals, displays by stores and distributors and radio programs. The printed matter uses the name "Campana's" in connection with the trade-mark. The radio program, which is probably the most important part, does so only in part.

As a result of the plaintiff's advertising and sales, the words "Italian Balm" have acquired a secondary meaning, and are now and have been for some time past widely associated in the mind of the public with the plaintiff's product.

■ When the plaintiff registered its trademark in 1927, it had been in actual and exclusive use by the plaintiff's predecessors for more than ten years preceding February 20, 1905. It was properly registered under the ten-year clause of the Trade-Mark Act of 1905, as amended, 15 USCA § 85, and is entitled to the protection of the act and, unless the mark is invalid because deceptive, the rights acquired by the plaintiff upon its registration are broad enough to support an injunction against the defendant in this case.

■ In Thaddeus Davids Co. v. Davids Manufacturing Co., 233 U. S. 461, 34 S. Ct. 648, 652, 58 L. Ed. 1046, Ann. Cas. 1915B, 322, the Supreme Court very fully and carefully outlined exactly what rights the registrant of a trade-mark under the ten-year clause of the Act of 1905 acquires. That clause removed, in certain cases, the obstacle which had theretofore existed in the case of geographical names, but marks of that class did not by registration acquire the status of a technical trade-mark and carry full and exclusive rights with them. They still depended for their validity and scope upon the secondary meaning doctrine, although, in some particulars, these rights were somewhat broadened. Speaking of such marks, the court said: "Their exclusive use as trademarks for the stated period was deemed, in the judgment of Congress, a sufficient assurance that they had acquired a secondary meaning as the designation of the origin or ownership of the merchandise to which they were affixed. And it was manifestly in this limited character only

that they received statutory recognition, and, on registration, became entitled to protection under the act." Amplifying, the court pointed out that geographical names though registered did not carry a monopoly or exclusive right. For example, they might be still used by persons whose goods actually were made at the place which was the origin of the name. So, in the present case, it seems clear that the plaintiff would not be entitled to restrain the use of the word as applied to lotions manufactured in Italy or, possibly, of Italian ingredients or by Italian methods.

On the other hand, the court said: "This is not to say that, in this view, the case becomes one simply of unfair competition * * * for, * * * still the right to be protected against an unwarranted use of the registered mark has been made a statutory right, and the courts of the United States have been vested with jurisdiction of suits for infringement, regardless of diversity of citizenship." In other words, there may be unwarranted uses of this type of trade-mark or trade-name which do not involve any unfair competition, fraud on the public, or palming off, which will be restrained simply because of the plaintiff's superior right. Such a use I conceive to be that made by the defendant in the instant case; that is, a use by a person whose product is in no way connected with the place which is the origin of the trade-mark.

This conclusion does not appear to be in conflict with the opinion of the Circuit Court of Appeals for the Third Circuit in Apollo Brothers, Inc., v. Perkins, 207 F. 530. That case did not involve a registered mark under the ten-year clause, and the rights acquired by such registration were not considered. All it holds is that in an ordinary secondary meaning case, unfair competition must be shown. In the Davids Case there was little if any similarity in dress beyond the use of the name itself in the same position on the labels as the plaintiff's. This the court held "constituted a 'colorable imitation' within the meaning of the act." At all events, the Davids Case was decided after the Apollo Brothers Case. Whether the Supreme Court would have held that, in order to restrain infringement of an unregistered geographical secondary meaning mark, unfair competition would have to be shown need not be considered. What the Supreme Court did hold was registration under the act gave that margin of protection.

These principles would unquestionably entitle the plaintiff in this case to an injunction if its product were really "Italian," in the sense of having been manufactured in Italy. I should think too that there would be no doubt about it if it were made of ingredients imported from Italy (Perkins v. Apollo Brothers, Inc., 197 F. 476, opinion of District Court. Reversed solely because no unfair competition was shown), or possibly if it were made by methods or processes known to be of Italian origin. The fact is, however, that the plaintiff's Italian Balm is not and never was made in Italy, and has nothing to do with that country in any way. There is a vague suggestion based on hearsay that it was invented by an Italian doctor, but there is no competent evidence whatever upon this point one way or the other. The real point of the defendant's case is that the word "Italian" is false and misleading, and, therefore, in spite of its registration, invalid as a trade-mark, and not capable of creating any rights at all.

A large number of decisions involving the use of geographical trade-marks for products which have no connection with the place of the name have been cited. Although at first these cases appear confusing, as a matter of fact, there is not much conflict. Many of them are clearly distinguishable from the situation presented here.

On the one hand are a number of cases in which the use of the geographical term was accompanied by fraudulent advertising which said in so many words or by implication that the article was made at the place in question. Cases of this kind are Perry v. Truefit, 6 Beav. 66 (medicated Mexican Balm); Connell v. Reed, 128 Mass. 477, 35 Am. Rep. 397. These decisions have no application here, because there is nothing about the plaintiff's advertising which is deliberately fraudulent or deceptive. The labels on the bottles show that the article is made in Illinois, and the package has "Made in America" at one end. Of course this does not affect the impression which may be gotten from the radio and other types of advertising which the plaintiff uses.

On the other hand, there are cases, also beside the point, in which, by reason of the nature of the article or the use made of the name, no one could possibly get the impression that the goods were manufactured at the place of the name. Such cases are the Vienna Bread Case (Fleischmann v. Schuckmann, 62 How. Prac. [N. Y.] 92) and the various cases involving names like New York Stores, Boston Stores, etc., in all of which the very nature of the thing made it clear that no one could be deceived, and there are others in which the label and advertising corrected any possible misconception. Philadelphia Cream Cheese Case (Phenix Cheese Co. v. Kirp, 176 App. Div. 735, 164 N. Y. S. 71). Still another example was the Cashmere Bouquet Soap Case (Colgate v. Adams [C. C.] 88 F. 899) in which the court said that though the name was that of a place it really carried no conception of place or geography.

This mark certainly carries a conception of geography, and it cannot be said with assurance that people who hear of Italian Balm might not get the idea that it was made in Italy. It is, in the broad sense of the word, deceptive.

But a geographical trade-mark may involve a degree of untruth and yet the deception involved may be perfectly innocent, harmless, or negligible. This, I think, is the point involved in Scandinavia Belting Co. v. Asbestos & Rubber Works (C. C. A.) 257 F. 937, 959. In that case the court said: "But if a trade-mark is to be invalidated for fraud because of misrepresentation, the representation should have been made with a fraudulent intent or it should at least appear that some one has been defrauded or is likely to be defrauded. We fail to discover any evidence to that effect in this record. In adopting the word 'Scandinavia' there was no ulterior purpose to be served and the parties were innocent of all wrongdoing. It does not appear that the original use of the term added anything whatever to the value of the belting sold under that mark. There is nothing in the record which shows that belting of any sort was even manufactured in any Scandinavian country, or of its having any reputation of particular excellence. * * * That he who comes into equity must come with clean hands, is, of course, true. But it is equally true that a court of chancery is open to redress the wrongs of any one who has not himself been guilty of willful misconduct in regard to the matter in litigation, and no willful misconduct is shown on the part of the plaintiff's predecessors in title, or on the part of the plaintiff, in the original adoption or subsequent use of the trade-mark." Of the reasons which the court gives for the rule it seems to me that the objective one, that no one has been or is likely to be defrauded, is the more logical, and the reason

879

that the plaintiff's mind is free from an intention to do wrong is of less importance. However, they are both given. Other cases of the same general type are Julius Kayser & Co. v. Italian Silk Underwear Co., 160 App. Div. 607, 146 N. Y. S. 22, and A. Stein & Co. v. Liberty Garter Manufacturing Co. (D. C.) 198 F. 959.

These cases are to be carefully distinguished from those in which the untruth involved in the use of a geographical name gives the plaintiff some advantage to which he is not entitled in fairness and honesty. The leading decision of this kind is Manhattan Medicine Co. v. Wood, 108 U. S. 218, 2 S. Ct. 436, 27 L. Ed. 706. There the court found as a fact that the impression created that the medical compound in question was manufactured at a particular place and by a particular person whose manufacture there had acquired a great reputation was important in giving the article an appearance of peculiar merit and promoting its sales. The same thing was true in Federal Trade Commission v. Bradley (C. C. A.) 31 F.(2d) 569 (English Soap), in which the court said that many of the public "believe that toilet soaps manufactured in England are superior in quality and other desirable characteristics to bath soaps manufactured in the United States." Another reason why the deception may be tainted with unfairness and fraud is that it may be designed to appeal to a particular part of the public, of foreign origin, who would be inclined to buy products coming from their own homes. Cases of this kind are De Nobili v. Scanda (D. C.) 198 F. 341 (Italian Cigars); Allan B. Wrisley Co. v. Iowa Soap Co. (C. C.) 104 F. 548 (Old Country Soap).

The line is not easy to draw. On the whole, however, I have come to the conclusion that whatever misleading effect the words Italian Balm may have as to the origin of the product, there is no fraud committed on any one, there is no unfair advantage gained by reason of any peculiar quality which may be imputed to the articles, there is no intended special appeal to any particular class of buyers, and there is no deliberately fraudulent intent. In other words, I think this case comes fairly within the rule of the Scandinavia Case, supra, and that the trade-mark is valid. It may be that Federal Products Co. v. Lewis, 57 App. D. C. 338, 23 F.(2d) 759, lays down a different rule. In that case "Venetian" was held to have a peculiar value for a skin lotion, and to be fraudulently deceptive as ap-

plied to an American-made product. That was a fact finding, and I do not know just what evidence moved the court to make it. In this case there is nothing to show that an Italian-made lotion is generally supposed to have any special or superior quality or unusually desirable characteristics.

The trade-mark being registered and valid, the plaintiff's right to an injunction against this defendant follows, and a decree may be presented accordingly.