## CHARLES HANSEN'S LABORATORY, Inc., v. KIRK.

### No. 8311.

District Court, E. D. Pennsylvania.

July 9, 1935.

Busser & Harding, of Philadelphia, Pa., for plaintiff.

Thomas R. White, of Philadelphia, Pa., for defendant.

KIRKPATRICK, District Judge.

This is a suit in equity to restrain infringement of a registered trade-mark. The mark consists of the word "Junket," and the plaintiff uses it in connection with the sale of tablets and powders, containing a preparation of rennet, for making the milk jelly dessert which is now almost universally known as junket.

The plaintiff is the largest manufacturer of this product in the country. It does business under the name of "The Junket Folks" and has spent a great deal of money in advertising, in all of which the word "junket" has been stressed, and in which it is applied indiscriminately to the product which the plaintiff sells and to the dessert which the housewife makes by its use. Examples: "Junket makes Milk into Delicious Desserts." "Junket *is* Milk—Plus." "You'll love Junket— served ice cold for dessert." Again: "Junket Powder makes milk into cool, creamy desserts." "Junket Tablets make milk into dainty desserts." "Chocolate Flavored Junket made with Junket Tablets." It is most confusing, and it is impossible to say whether, in the plaintiff's vocabulary, "junket" means the tablets and powders which the plaintiff sells, or the enzyme which they contain, or the dessert which the cook makes. It looks very much as though the plaintiff, having registered its mark as applied to its tablets and powders ("preparations for coagulating or curdling milk"), is attempting to build up a complete monopoly of the word and to appropriate it to its exclusive private use. At any rate, that would be the practical result if uses such as this defendant makes of it were to be restrained, as will be seen.

The defendant makes and sells a liquid rennet preparation for the same pur-

pose. He does not call his liquid "junket," but "Jullicum," which word he has registered as his trade-mark. His packages and advertising, however, in substance carry the message that "Jullicum" is for use in making "Junket," "Junket desserts," and "jullicum junket."

At this point it may be said that the evidence is insufficient to sustain the charge that the defendant is trying to palm off his product as that of the plaintiff, and I find that he is not doing so. Nor does he print or display the word "junket" in the manner which would be a "copy or colorable imitation" of the plaintiff's mark. See Thaddeus Davids Co. v. Davids Mfg. Co., 233 U. S. 461, 34 S. Ct. 648, 652, 58 L. Ed. 1046, Ann. Cas. 1915B, 322.

This being so, it seems perfectly clear that the defendant does not infringe, unless the plaintiff "owns" the word—has the sole right to use it in trade to the exclusion of all others. This was undoubtedly the basis of Judge Lacombe's order in Hansen v. Siegel-Cooper Co. (C. C.) 106 F. 691, in which he expressly permitted the defendant in that case to sell "Anker's Capsules for Making Junket"; and of Judge Knox's recent order in the Jelkwik Case (D. C.) 12 F. Supp. 296, also permitting the phrase "for making junket." If, however, the plaintiff can sustain the broad trade-mark rights which form the real basis of this suit, then, I think, the defendant unquestionably infringes.

This brings us immediately to the question of the scope of the plaintiff's rights, acquired by its registered trade-mark. It claims under two registrations, the first in 1897 under the act of March 3, 1881, 21 Stat. 502, and the second in 1922 under the Act of Feb. 20, 1905, 33 Stat. 724 (15 USCA § 81 et seq.). The important question is whether the word "junket" was at the time of its adoption by the plaintiff a descriptive word. If it never was, the plaintiff has a technical trade-mark and would have the exclusive right to use it. If the word was descriptive and the plaintiff's rights depend upon a secondary meaning, the registration might still be valid and the plaintiff would be entitled to a measure of protection but not the relief asked for against this defendant.

As I understand the plaintiff's position, it is this: It concedes that the word "junket" is a very old word in the English language, which, prior to the time when the plaintiff began to manufacture its tablets, had a number of different meanings. As applied to food products, it meant, says the plaintiff, curds of milk from which the whey had been removed by straining, which curds were then mixed with clotted cream and sweetened. This, however, was never called "junket" simply, but always "Devonshire junket." The word was also used of cheese cake and more generally of any delicate food. It also referred to a drink made of cream and rennet, or whey and rennet, flavored with wine. In addition, it referred to a party or pleasure trip (in America by politicians at public expense). It never meant the dessert which we now know as junket. The plaintiff's case is that it took this word of somewhat vague and varied meanings and applied it to something new,—the rennet ingredient which it manufactured and sold as "junket tablets"; that its advertisement and sale were so extensive that the word became definitely associated in the public mind, first with its special product and later by a natural process of transfer with the dessert which the product was designed to make, and that if the word is now in the dictionary as meaning a milk jelly dessert it is because the plaintiff put it there. Plaintiff contends that if it is true that it used an English word in an arbitrary and nondescriptive sense it is entitled to it as a trade-mark, and that it does not lose its rights merely because its own widespread sales and advertising have caused the word to become descriptive, not only of the ingredients sold by the plaintiff but of something which the ingredient is used to make.

Assuming, without deciding, that the plaintiff's position is sound in law, is its contention as to the facts supported by the evidence in this case? Was the word "junket," at the time the plaintiff began to apply it to its rennet preparation, a descriptive word as denoting the dessert which it is used to make? Very likely it had never been applied to powders and tablets such as the plaintiff made, but that is unimportant. If "junket" meant the dessert, the plaintiff could not appropriate the word for its exclusive use in connection with the necessary ingredient to make it, any more than it could invest some special kind of yeast cake, christen it "bread," and thereafter prevent

others from making and selling the staff of life as bread.

In view of the plaintiff's position the time element is important. The plaintiff's first-claimed use in America of the word as applied to its product goes back to 1878. Its first proved use was in 1887, and I think it is agreed that that would be about the period to which we must direct our inquiry as to whether the word was descriptive or not. Of course uses after that time also have a bearing upon the question because words do not acquire meanings overnight, and the whole history of this word must be considered together.

I shall not attempt to detail all the evidence. The plaintiff examined four hundred and twelve cook books in the Library of Congress published prior to 1890, with the result that it found forty-six recipes for the milk jelly dessert in question, only one of which used the word "junket" in connection with it and then as an alternative name, "Mountain Custard—(Junket)." Other names were "Cold Custard," "Rennet Custard," "Mountain Custard," "Curds and Cream," "Slip, Curds and Whey," etc. The plaintiff's affidavit upon this point does not indicate how often, if at all, the recipe for Devonshire junket was given. This is consistent with his position because he has always contended that Devonshire junket is an entirely different thing.

The defendant also made an exhaustive search and has unearthed Cooley's Cyclopaedia of 1846 (Junket, Devonshire); Paul's Cookery from Experience, of 1875, which, after giving the recipe, said, "This is only for cold custard or junket and cheese cakes"; Mrs. Rorer's Hot Weather Dishes, of 1888; Thudichum's The Spirit of Cookery, of 1895; the Druggists Circular of 1889—in all of which junket, as we know it, is described by that name, and other evidence, including the affidavit of Fairchild, a manufacturer of a similar preparation called "Essence of Pepsine," who testified that his firm had used the word "junket" for about fifty years and that it was in common use for many years prior to 1887, and who produced several circulars advertising his product in the nineties and referring to the dessert as junket.

Just exactly how Devonshire junket was made is not easy to say, but I believe the recipe for it in Cooley's Cyclopaedia in 1846 would make the milk jelly dessert now known as "junket" or something very close to it. At any rate, I do not think that there is ground for the total differentiation which the plaintiff makes between Devonshire junket and ordinary junket, and prior use of the concededly descriptive term, "Devonshire junket," must be taken into account.

■ The net result of all the above is the fact finding which I now make that the word "junket" was a descriptive word frequently, although by no means universally, applied to the dessert which it now designates. It had other meanings and the dessert had other names, but nevertheless "junket" did mean the dessert, and when the plaintiff called its product "junket tablets" it was not making an arbitrary or fanciful use of the word, but adopting a name which was already quite sufficiently attached to the product to enable the public to know what was meant without any education upon that point. Probably what the plaintiff's advertising has done is to give the meaning of the word an added impetus along a channel which was open and flowing at the time of the plaintiff's advent.

■ The foregoing finding eliminates plaintiff's mark as a technical trade-mark. The secondary meaning phase remains to be considered. Secondary meaning descriptive words may be registered and the registration will confer certain rights on the owner—not a monopoly or exclusive right, but broader than the mere right to proceed against a competitor on the basis of unfair competition. In Thaddeus Davids Co. v. Davids Manufacturing Co., supra, the law was so clearly and explicitly stated as to leave little room for misunderstanding. That was a case of a personal name, but the principles involved are the same. In Campana Corporation v. Nathan Glanzberg, 10 F. Supp. 876, 877, filed April 8, 1935, recently decided by this court, it was said: "There may be unwarranted uses of this type of trademark or trade-name which do not involve any unfair competition, fraud on the public, or palming off, which will be restrained simply because of the plaintiff's superior right." Thus in the Davids Case the defendant, whose name was the same as the plaintiff's, was not restrained from using his own name in any manner upon his goods, but from using it at the top of his labels in a manner which was

a colorable imitation of the plaintiff's use. Of course, if the defendant had been named Smith or Jones he would have been restrained from using the name Davids at all, simply because of the plaintiff's rights acquired by its trade-mark registration without the necessity of showing any unfair competition or palming off.

It must be admitted that it is much easier to apply these principles to place and personal names than to descriptive words. It may be true that the word "junket" has become largely associated in the public mind with something made by the use of the plaintiff's tablets, but this defendant is making something which is actually and honestly junket. As to such a situation the Supreme Court in the Davids Case said: "In the case, therefore, of marks consisting of names or terms having a double significance, and being susceptible of legitimate uses with respect to their primary sense, the reproduction, copy, or imitation which constitutes infringement must be such as is calculated to mislead the public with respect to the origin or ownership of the goods, and thus to invade the right of the registrant to the use of the name or term as a designation of his merchandise. This we conceive to be the meaning of the statute."

In other words, the plaintiff may acquire a right in a descriptive word if he has given that word a secondary meaning. His right is not the exclusive ownership or monopoly of the word. He can restrain others from using the word in any manner calculated to mislead the public with regard to the origin or ownership of the goods. But he cannot restrain others from using the word in connection with goods to which it properly applies and which it honestly describes, in a manner which involves no "copy or colorable imitation" of the plaintiff's use. There may still be confusion. The plaintiff may still lose sales to persons who think they are buying his goods, in the same manner (though, perhaps, in greater degree) as in case of a personal or place name. That, however, is a drawback which must be considered when a dealer starts out to give a secondary meaning to an ordinary descriptive word. The broader the connotation of the word which he has thus attempted to appropriate, the narrower will be his rights against infringers. The field of fancy and imagination in the selection of arbitrary trademarks is so wide that there is little hardship in holding that every intendment of policy ought to be against the appropriation of words of common everyday usage.

In the light of these principles it is clear that it is unnecessary to decide whether or not the plaintiff's registration is valid; that is, whether or not the word has acquired a secondary meaning. It may be assumed without deciding that it has, but the defendant is selling an essential ingredient of an article of food which is properly described as "junket," and he has the right to say so, provided he does so in a manner not intended to deceive or palm off. As has been stated, the evidence falls far short of showing fraudulent intention or acts. His package is entirely different from the plaintiff's. He has chosen an entirely different name for the product which he sells. He does not unduly stress the word "junket." I therefore find as a fact that the defendant's use of the word "junket" is not such as is calculated to mislead the public with respect to the origin or ownership of the goods.

The conclusion of law follows that the plaintiff has failed to show that the defendant has invaded its rights, and the bill must be dismissed, with costs.