**NATIONAL CANDLE COMPANY, Inc.,**
Plaintiff,

v.

**VISCOUNT MANUFACTURING CO.,**
Inc., Defendant.

Civ. A. No. 586–61.

United States District Court
D. New Jersey.

Aug. 18, 1961.

Suzuki, 1st Dept., 216 App.Div. 487, 215 N.Y.S. 505, affirmed without opinion 243 N.Y. 648, 154 N.E. 642.

Harkavy & Lieb, by Jerome S. Lieb, Newark, N. J., for plaintiff.

Davidson, Miniutti & Nester, by Joseph Nester, Jersey City, N. J., for defendant.

WORTENDYKE, District Judge.

The verified complaint in this action invokes the diversity jurisdiction of this Court. Plaintiff is a corporation of the State of New York and defendant a corporation of the State of New Jersey. It is alleged that the amount in controversy exceeds the jurisdictional minimum. I recognize jurisdiction under 28 U.S.C. §§ 1332 and 1338.

Upon the filing of the complaint on July 24, 1961, Chief Judge Smith of this Court granted an order directing the defendant to show cause why a preliminary injunction should not issue restraining the defendant "from selling and distributing products of defendant in packages similar or substantially similar to those of the plaintiff in size, color and design, and from doing any act so as to create an impression upon the public that defendant's products are those of the plaintiff or have any connection whatsoever with the plaintiff's product." The return of the order to show cause was continued to August 14, 1961, on which date evidence was adduced in behalf of both parties before the undersigned upon the application for the preliminary injunction. This memorandum is intended to serve as a substitute for the findings of fact and conclusions of law required by the provisions of F.R.Civ.P. 52(a), 28 U.S.C.A.

Each of the parties manufactures, and sells at wholesale, votive candles, which are retailed through grocery stores and supermarkets, as well as through churches. The candles are burned by the ultimate purchasers in the home or in the church as an act of religious devotion. Neither the candles nor the immediate receptacles into which they are placed for burning are patented; nor does the plaintiff contend that the defendant is not completely at liberty to manufacture these candles and to sell them in competition with those manufactured by the plaintiff.

It is conceded that the product of each of the parties is shipped in interstate commerce. Both parties package their candles in boxes, which are thereafter shipped in cartons containing several gross of candles. The exteriors of the cartons bear names and designs indicative of the identity of the manufacturer of the contents.

 Prior to the return of the order to show cause, the shipping cartons of the defendant bore such colors, so arranged, and with such similar designs, as to resemble the cartons of the plaintiff to a degree which I find, and counsel concedes, was misleading and confusing, and likely to induce purchasers of cartons of defendant's candles to believe that they were purchasing the product of the plaintiff. However, plaintiff's counsel concede that the use of these cartons by the defendant was abandoned prior to the return of the order to show cause. The defendant will, therefore, be enjoined from resuming the use of cartons characterized by the colors, arrangement and design previously employed, and abandoned as aforesaid.

Plaintiff's business is a family enterprise. It has been conducted since 1923. Its former president was the uncle of the president and principal stockholder of the defendant corporation, who bears that relative's name, and who was formerly employed by the plaintiff from his early youth. The nephew resigned from that employment and organized the defendant corporation, through which he has been conducting a business which includes the manufacture and distribution of votive candles similar in general appearance to, and intended for use similar to that of the product of plaintiff. Defendant's candles are, however, yellowish in color and scented to a degree, while those of the plaintiff are white and unscented.

Because of the plaintiff's contention that the candles of defendant's manufacture are inferior in quality to those of the plaintiff, a sample of each was admitted in evidence, and the Court was requested to light both of the candles and to observe their burning for the purpose of comparing their respective quality. The Court has complied with this request, but after burning the two candles for two and a half hours, it observed that the defendant's candle burned more slowly at the outset, while that of the plaintiff exhibited a slightly brighter flame after burning for about an hour. The consumption of the candles progressed at approximately equal rates. I am unable to conclude from this experiment that either is superior to the other.

Votive candles are manufactured and distributed by several manufacturers in this northeastern area of the United States. The candles made by each manufacturer are similar in size, shape and composition. They are classified according to the number of hours throughout which they will continuously burn. They are packaged in cardboard boxes, each containing twelve candles. Samples of the respective boxes employed by the parties to this action, and by several other votive candle manufacturers, were placed in evidence upon the hearing of the application for preliminary injunction.

The boxes of the present parties, as well as those of six other votive candle manufacturers shipping in interstate commerce in the same area, are colored red, white and blue in combination. There was uncontradicted testimony that combinations of these three colors are predominantly characteristic of the boxes in which the majority of manufacturers package their votive candles. Two of the boxes submitted, those of Star Candle Company and Gallo Candle Co., Inc., both of Brooklyn, New York, do not employ those colors. The boxes of Star Candle Co. are combinations of orange, green and white, and those of Gallo of orange, blue and white.

■ Plaintiff recognizes that the use of similar colors does not constitute unfair competition nor amount to infringement of a trade mark. Plaintiff, however, contends that defendant's use of similar colors for its candle boxes, in conjunction with similarity of arrangement and accompanying design, is likely to mislead a prospective purchaser into believing that the product of the defendant is that of the plaintiff. I find no support in the evidence for this contention.

To accommodate one dozen 15-hour candles, each of the parties employs rectangular-sided cardboard boxes of approximately the same dimensions, viz., seven to seven and one-quarter inches in length, five and one-quarter to five and three-eighths inches in width, and two and one-quarter inches in depth. Five of the six faces of each of these boxes are colored, and bear thereon lettering, pictures and designs which are completely dissimilar in appearance from those upon the other.

The exterior of the top or cover of the plaintiff's box viewed as it normally rests upon a shelf or counter, contains three successive bands of color, from left to right, i. e., a narrow red band, a wide royal-blue band, and a second but wider red band. Upon the blue band, in white letters running transversely thereof is the legend "Three Star Candles" beneath which appears a row of three 5-point-

ed stars; each point being half white and half red in color. Beneath the row of stars, and in white script letters, is the legend " 'Always the Best' ". On the wider red band of the cover appear successively, from top to bottom, a blue and white medal with bar, ribbon and pin, two blue and white medallions in a horizontal row—one depicting the head of Mercury and the other a sign of the zodiac—and beneath the foregoing three symbols, is a diagrammatic representation of a burning candle in its cup-like holder; the holder being blue, the candle white, and the flame and its radiance red and white. These three principal bands of color continue around the box, except for the central portion of the bottom, for which they form a narrow framing border. On the front panel, viewed in the same aspect, and within the continuing blue band, appears the legend "Three Star Candles" above a row of three white-and-red stars, as described above. In the wider red band on the same panel, in white letters running horizontally with respect to the panel, appear the words "ORIGINAL VOTIVE LIGHTS" and underneath "Approved by—The Vatican—For Religious Use", in three lines, one indented slightly below the other. On the rear panel, opposite to that just described, and running horizontally of the wider red band is the legend "ORIGINAL VOTIVE LIGHTS" and beneath it "Safe—Clean—Economical" in white letters, and positioned on three staggered lines similarly to the text on the front panel. Upon the blue band of the back panel, also running horizontally with respect thereto, appear the same legend and symbols as on the blue band on the front panel. On each end of the box, against the background of the red color, are the following legends, running horizontally: "One Dozen 15 hour" (in black); beneath that, in blue and white letters, "Three Star Lights" (each word on a separate line, one above the other); and to the right of these legends, a vertical column of three blue and white 5-pointed stars, of a size and conformation similar to those elsewhere portrayed against a blue background in red and white colors. The bottom of plaintiff's box is almost entirely a white background, narrowly bordered in red, intruded upon by the still narrower ends of the wide blue band circling the box. Upon the white background of this bottom surface, in blue letters and symbols, in the Italian and English languages, above and below a facsimile of a diploma, are references to the awards received by the business conducted by the plaintiff, and further portrayals of the medal and medallions described as being shown upon the red band of the cover.

The defendant's box employs but two bands of color, navy blue (darker than that of the plaintiff's) and sienna red (duller in tone than that of the plaintiff's) surrounding all surfaces of the exterior of the box, except the bottom. In the narrower blue band is a schematic outline, in white, of the facade and steeple of a church. A similar motif, or part thereof, i. e., the upper portion of the steeple, appears on each of the ends, and on the back panel of the box. Occupying principally the wider red band on the top but extending into the blue band, and employing Old English for the capital letter of each, appear in white letters the words "Church Candles"; and beneath, a schematic diagram of a lighted votive candle in blue and white, but without the radiance indication. In the upper right corner of the red band, on the lid of the box, is an elliptical white spot upon which a price could be marked. On the front panel of the box, viewed in similar aspect, and extending horizontally along the same, is the legend "Church Candles" above the legend "Votive Lights for Religious Use"; the latter extending along the bottom of both blue and red panels and beneath the lower edge of the facsimile of the church facade above described. The opposite (back) panel of the box is identical in color and legend, except that only the tip of the steeple of the church is shown, instead of the facade thereof. Upon each of the ends, one blue the other red, in addition to the portrayal of the church

steeple, appears the legend "One dozen 15 hour Church Candles" on two lines, in white, and in the lower left-hand corner of the blue end, another white elliptical spot, presumably for the marking of the price thereon. On the bottom of defendant's box, all white with the exception of the border formed by the continuation of the two colored bands which surround the box, appears the legend "Viscount Manufacturing Co., Inc., 90 Forrest Street, Jersey City, New Jersey Made in U.S.A."

■ The several distinguishing features of the boxes employed by the respective parties emphasize the remoteness if not the impossibility of any confusion which might arise in the eyes or minds of purchasers of their respective products. In the first place, although each box and the symbols and legends thereon employ three colors, the proportions and allocations of the colors to the exterior of the boxes differ, as does the shade of the blue and of the red employed. Any likelihood of confusion by reason of the employment of the three colors, is, in my opinion, precluded by the superimposition thereon of differing legends, designs and pictorial representations. Plaintiff's candles are labeled "Three Star Candles", those of defendant "Church Candles". As previously indicated, the employment of the colors red, white and blue in combination upon the boxes in which votive candles are packaged predominates among other manufacturers of the product; some of which are variously known as "Crusader" and "Crusader Brand", "Sacred Heart", "Star", "Vita", "Valley" and "Diamond Altar" candles. The Star Candle Company of Brooklyn packages some of its product in red, white and blue boxes, and others in boxes colored green, white and orange. (That company is not the plaintiff in this action, despite the fact that the plaintiff's product is named "Three Star" candles.) Another manufacturer of votive candles, Gallo Candle Mfg. Co., Inc., employs a box colored blue, orange and white, and its candles are known as "Madonna" brand candles. A trade mark by color alone cannot be acquired. Campbell Soup Co. v. Armour & Co., 3 Cir., 1949, 175 F.2d 795.

I find no misleading similarity between the packages of the respective parties in this action. The evidence fails to disclose that defendant's use of its box has caused or is likely to cause irreparable damage to the plaintiff.

The evidence before me disclosed that plaintiff's annual sales amount to $400,-000, and that the value of its assets is between $125,000 and $130,000. While there was testimony that plaintiff's sales for the current year to date were slightly lower than for the corresponding period of the previous year, there was no evidence that the plaintiff has sustained or is likely to sustain any loss, much less any irreparable damage, from the defendant's continuance of the use of its boxes. On the other hand, the defendant was incorporated as recently as April 1961, and its total sales during the period between its commencement of business and the time of the hearing before me, amounted to between $350 and $500. Whatever competition the defendant may ultimately achieve against the plaintiff is at best prospective, and, in my opinion, presently not unfair.

The grant of a preliminary injunction at this stage of the case will not enhance the maintenance of the status quo between the parties. Upon the evidence presented to me there is little, if any, likelihood that the plaintiff will ultimately prevail. There is complete absence thus far of any evidence that, by the use of its package, defendant is "palming off" its product as that of the plaintiff. Moreover, I cannot conclude from the testimony or the exhibits, including the test which I was requested to make by simultaneously burning a sample of the product of each of the parties, that either product is inferior to the other. See Speedry Products, Inc. v. Dri Mark Products, Inc., 2 Cir., 1959, 271 F.2d 646; American-Marietta Co. v. Krigsman, 2 Cir., 1960, 275 F.2d 287.

Since the power to grant a preliminary injunction is entrusted to my sound discretion, it should be exercised only with great caution and in clear cases. The grant of such extraordinary relief would be justified only by a showing of probable irreparable injury during the pendency of the action, and of the likelihood of ultimate success on the part of the applicant therefor. Murray Hill Restaurant Inc. v. Thirteen Twenty-One Locust Inc., 3 Cir., 1937, 98 F.2d 578.

Plaintiff's motion for a preliminary injunction is denied and an appropriate order may be presented in accordance with the views herein expressed.