414 P.2d 898

**FARM SERVICE, INCORPORATED,
Plaintiff-Respondent,**

**v.**

**UNITED STATES STEEL CORPORATION,
Defendant-Appellant.**

**No. 9692.**

Supreme Court of Idaho.

May 27, 1966.

Rehearing Denied June 20, 1966.

Richards, Haga & Eberle, Boise, and Hume, Groen, Clement & Hume, Chicago, Ill., for appellant.

Parry, Robertson & Daly, Twin Falls, for respondent.

Elam, Burke, Jeppesen & Evans, Boise, Sellers, Conner & Cuneo, Washington, D. C., for amicus curiae Nat. Plant Food Institute.

TAYLOR, Justice.

Plaintiff (respondent) was chartered by the State of Idaho on March 13, 1957, under the name of Farm Service, Incorporated. Its place of business was located at Kimberly, in Twin Falls county. It was engaged in the business of marketing fertilizers, performing soil and tissue testing and fertilizer application services. During the eight years of its existence plaintiff had spent approximately $20,000 in advertising its products and services by means of newspaper ads, radio and television commercials and by direct mail. During that period plaintiff's gross sales had totaled $1,813,738; its trade area consisted of Gooding, Lincoln, Jerome, Twin Falls, Cassia, Minidoka, Camas, Blaine, Owyhee and Elmore counties.

Defendant (appellant) United States Steel Corporation, was a New Jersey cor-

poration qualified to do business in Idaho. It manufactured and sold fertilizers and other farm supplies and had been selling fertilizers in Idaho through independent retailers from 1957 through 1964. Some 58 of such independent retailers operated in plaintiff's trade area. These dealers conspicuously displayed the United States Steel trademark by means of a large sign which identified each as a United States Steel dealer.

In 1964 defendant began to supplement the network of independent dealers with a series of retail sales and service centers operated by it directly. These centers were designed to provide farmers with soil testing; laboratory analysis; advisory services of trained agronomists; to custom blend fertilizer products; to sell such directly to the farmer; and to furnish advisory application service. These centers were to be advertised and identified by signs in front of each as "United States Steel Farm Service Center" or by defendant's registered trademark "  ".

Upon learning of defendant's plan to establish such centers, plaintiff in September and October, 1964, protested to the defendant against the use by defendant of the words "Farm Service" in designating or advertising defendant's contemplated retail outlets, in plaintiff's service area. Defendant declined to heed the protest. In December, 1964, prior to the opening by defendant of any of its retail centers in plaintiff's trade area, plaintiff commenced this action seeking both a temporary and a permanent injunction forbidding defendant to use the words "Farm Service" in the advertising or designation of its proposed retail outlets. In February, 1965, defendant established a retail outlet in Paul, Idaho, 45 miles from plaintiff's place of business; and in March, 1965, defendant established another in Hansen, Idaho, two miles from plaintiff's place of business; each designated and advertised as "United States Steel Farm Service Center."

In this action plaintiff claimed the exclusive right to the use of the words "Farm Service" in its trade area; that it had acquired such right by the advertising and carrying on of its business under its corporate name, and that during the eight years of such advertising and business the words "Farm Service" had become identified in the public mind with plaintiff's business and had thus acquired a secondary meaning. Plaintiff also contended that since defendant had theretofore done business in plaintiff's trade area only as a wholesaler, and through independent dealers and since such independent dealers had prominently displayed the United States Steel Corporation trademark in connection

with their business, farmers in the area would now be misled to believe that "United States Steel Farm Service Centers" were independent dealerships operated by plaintiff; that defendant was intentionally trading on plaintiff's good will; engaging in unfair competition; and that plaintiff would suffer irreparable injury thereby.

On defendant's motion the cause was removed to the United States District Court for the District of Idaho, Southern Division, on the ground of diversity of citizenship, and that the controversy involved more than $10,000. Plaintiff moved for a remand to the state court, contending that the amount in controversy did not exceed $10,000. In support of its motion plaintiff submitted an affidavit by its president in which he averred:

"That except for the minor annoyances arising out of the misdelivery of mail and packages plaintiff, Farm Service, Incorporated, has not sustained any diminution of its volume of business or any damages whatsoever.

"That affiant is not aware of the value of the good will of the business of Farm Service, Incorporated, if any it has. Any damage Farm Service, Incorporated will or may suffer in the event the defendant uses a similar name in plaintiff's trade area is not known. Any calcula-

tions with respect to any of these items would be entirely speculative and conjectural."

In its brief, supporting its motion for remand, plaintiff stated to the federal court:

"Mr. Coulson P. Parris, President of Farm Service, Inc., states in his affidavit that Farm Service, Inc. has not now sustained any dimunition in its volume of business or any monetary damages whatsoever and he is not aware of the value of the good will of the business of the plaintiff, if it has any. It is entirely possible that, in the event the defendant is granted the right to use a name similar to that of plaintiff that plaintiff will not suffer any dimunition of business or loss of good will."

The federal court remanded the cause to the state court on the ground that the amount in controversy did not exceed $10,-000. Thereafter, on April 9, 1965, a hearing was had upon plaintiff's motion for a preliminary injunction. Upon the hearing, plaintiff's secretary and plant manager testified that following defendant's publicity campaign in connection with the opening of its farm service centers:

"We received certain items of mail which were addressed originally to Hansen, to various names. One of them was Farmers Service Center, one was U. S.

Steel, care of Farm Service Center. · In each case, these addresses had been changed and they had appeared in our post office box at Kimberly, Idaho. We received some phone calls about this time asking for people or for individuals. They were largely long distance calls asking for individuals unknown to us, and in checking back with the person placing the call, we found they were trying to reach U. S. Steel at Hansen. We had several requests from prople in the area regarding the construction that was in progress and asking if it was any part of our organization."

Plaintiff also produced evidence that freight companies misdelivered to it, packages intended for U. S. Steel; that its advertising in the trade area had brought to it the volume of sales which it had achieved; that plaintiff's officers thought the words "Farm Service" had acquired a secondary meaning among fertilizer users in the area and had become synonymous with plaintiff's business and corporate name; and that most of the fertilizer to be sold in the area during the year 1965 would be sold within the following 30 to 45 days; and that if defendant used the words "Farm Service" in its business and advertising plaintiff would suffer irreparable injury.

Defendant's showing, consisting of exhibits and affidavits, among other things, revealed that a number of retail dealers in and around plaintiff's service area used the words "Farm Service" in the name identifying their business, and in their advertising. While some of these firms were not located within plaintiff's trade area, their advertising did extend over a portion or all of that area. In all, defendant named eight of such business establishments in southern Idaho using the words "Farm Service" in their names and advertising. Of these, four were located in or near plaintiff's service area, so that their business and advertising would cover portions of that area. Exhibits were admitted showing plaintiff's name and advertising as follows:

Exhibits showing defendant's designation of its service centers and advertising were as follows:

The trial court found that the words "Farm Service" had acquired a secondary meaning designating the business conducted by plaintiff within its trade area; that

"The names 'USS Farm Service Center', 'United States Steel Farm Service Center' and 'Farm Service Center' are deceptively similar to the words 'Farm Service Incorporated', 'Farm Service Inc' and 'Farm Service'."

that continued use by defendant of the words "Farm Service" would permit defendant to engage in unfair competition, and unfair practice; that plaintiff will suffer irreparable damage therefrom; that the use by defendant of the words "Farm

Service" in plaintiff's trade area over plaintiff's prior protest constituted a deliberate and intentional trading on the good will of the plaintiff; and that the use by defendant of the words "Farm Service" is likely to deceive, mislead and confuse the public, and has deceived, misled and confused certain of the public.

The court then made and entered its order granting preliminary injunction in terms as follows:

"Ordered, that defendant, its agents, servants, employees and attorneys and all persons in active concert and participation with it be and they hereby are restrained and enjoined, pending the determination of this action, from in any manner using the combination of the words 'Farm Service,' in that order, in any manner whether it be by written advertising contained in printed magazines, trade journals, newspapers or other media of advertising or, by radio, television, billboards, signboards, or by word of mouth or by any other use of the words 'Farm Service' to designate defendant's fertilizer outlets; and further, from the use of such words on any item of personal property used for advertising and from the use of the combination of such words upon any equipment owned, leased to, rented by, used for or on behalf of defendant; all of the foregoing shall apply within the trade area of plaintiff which is defined as the counties of Gooding, Lincoln, Jerome, Twin Falls, Cassia, Minidoka, Camas, Blaine, Owyhee, and Elmore, all in the state of Idaho; and defendant is further directed to forthwith remove from any of its buildings, equipment, signboards and from all advertising media, letterheads, stationery, billings and, or other designations of its fertilizer outlets within the trade area hereinabove described all combinations of the words 'Farm Service,' in that order."

Defendant thereafter filed objections to the findings, conclusions, the preliminary injunction, and a motion under IRCP Rule 52(b) for amended and additional findings. Among other things, the defendant urged by its motion that it be permitted temporarily to cover and obliterate the words "Farm Service" in its advertising where exposed to public view, during the pendency of the action, rather than be compelled to remove, physically, such words from all of its advertising immediately and prior to final judgment. The motion was denied.

After taking its appeal, defendant moved the trial court pursuant to IRCP Rule 62(c) for an order suspending the preliminary injunction during the pendency of the appeal upon such terms as to bond as the court would consider proper for the security of the rights of the plaintiff. This motion was also denied.

The injunction order was not only designed to preserve the status quo, but it mandatorily required defendant to remove the words "Farm Service" from all forms of its existing advertising within plaintiff's trade area. In its complaint plaintiff prayed only for the injunction and general relief. No damages were claimed to have been sustained at the time the complaint was filed. Thus, the preliminary injunction granted to plaintiff, prior to trial on the merits, all of the relief it sought by its complaint.

In Rowland v. Kellogg Power & Water Co., 40 Idaho 216, 225, 233 P. 869 (1925), this court said:

" 'On an application for a preliminary injunction, it is not necessary that a case should be made out that would entitle complainant to relief at all events on the final hearing. If complainant has made out a prima facie case or if from the pleadings and the conflicting affidavits it appears to the court that a case is presented proper for its investigation on a final hearing, a preliminary injunction may issue to maintain the status quo.'

" * * * A temporary injunction will not usually be allowed where its effect is to give the plaintiff the principal relief he seeks, without bringing the cause to trial; neither should a preliminary injunction be dissolved where its effect would be such as to give the defendant the relief he seeks without bringing the cause to trial."

The same principle was applied in Gilbert v. Elder, 65 Idaho 383, 144 P.2d 194 (1943), where an order staying a preliminary injunction was deemed equivalent to giving the defendant the relief it sought in the action.

The same rule was reiterated in Lawrence Warehouse Co. v. Rudio Lumber Co., 89 Idaho 389, 405 P.2d 634 (1965). In that case we also held that the burden of proving its right to a preliminary injunction was upon the plaintiff.

█ The rule against granting a preliminary injunction which will have the effect of giving to the party seeking the injunction all the relief sought in the action, does not preclude the granting of such an injunction in a proper case. Rather, it is to be understood as requiring the moving party in such case to show a clear right to the relief sought. Cf. I.C. § 8–402(1).

In cases involving ownership or right of possession of specific property, this court has held that a preliminary injunction to preserve the property in status quo pending final judgment, is proper, although other remedies may be available to the moving party, since the owner is entitled to the protection of his property in specie. Gilpin v. Sierra Nevada Con. Min. Co., 2 Idaho 696, 23 P. 547, 1014 (1890); Staples v. Rossi, 7 Idaho 618, 65 P. 67 (1901).

In this case tangible property is not involved. The issue is alleged unfair competition. Plaintiff is seeking protection of a claimed intangible right. In such a case the court should consider the availability to plaintiff of other remedies; whether plaintiff will suffer great or irreparable injury, during the pendency of the action, as contemplated by the statute, I.C. § 8–402 (2); whether any such injury may be adequately compensated in damages; and whether the defendant may be able to respond in damages. These considerations should be weighed against the injury which may result to the defendant during the pendency of the action by the imposition of the temporary injunction, in case it should finally be determined that plaintiff was not entitled thereto. Plaintiff's showing in the federal court in support of its motion to remand, indicated its damages, in the absence of any injunction, would be minimal.

As to the third ground for injunction mentioned in I.C. § 8–402(3), the record does not indicate that anything defendant might do, during the pendency of the action, would tend to render a final judgment for plaintiff ineffectual.

The granting or refusal of a preliminary injunction is within the discretion of the trial court. Unity Light & Power Co. v. City of Burley, 83 Idaho 285, 361 P. 2d 788 (1961). Obviously that discretion must be exercised with caution. Such an injunction can be granted only after a full hearing and a showing of a clear right thereto. Lawrence Warehouse Co. v. Rudio Lumber Co., 89 Idaho 389, 405 P.2d 634 (1965).

" * * * a preliminary mandatory injunction is granted only in extreme cases where the right is very clear and it appears that irreparable injury will flow from its refusal." Evans v. District Court, 47 Idaho 267, 270, 275 P. 99 (1929).

Where the preliminary injunction is based in substantial part upon an erroneous conclusion of law, the appellate court may review the conclusion independently of the issue of abuse of discretion. Ring v. Spina, 148 F.2d 647, 650, 160 A.L.R. 371 (2nd Cir. 1945).

The court erroneously concluded that plaintiff had established an exclusive right to the use of the combination of the words "Farm Service" as a tradename within its trade area. This conclusion was based upon the court's findings as to the number of years the plaintiff had used the words in its corporate name and advertising, and that the words had acquired a secondary meaning designating plaintiff's business. The words "Farm Service" are generic and also descriptive of a business.

"Although a word may have acquired a secondary meaning, it still belongs to

the public in its primary descriptive sense and any person may use it, provided he does so in such a way as not to convey the secondary meaning and deceive the purchasing public." Hygrade Food Products Corp. v. H. D. Lee Mercantile Co., 46 F.2d 771 (10th Cir. 1931)

In Charles Hansen's Laboratory v. Kirk, 12 F.Supp. 361, 364 (E.D.Pa.1935) the court stated that while a tradesman might establish a secondary meaning for a descriptive word, he cannot restrain others from using the word in connection with goods it honestly describes.

In its proposed Restatement of the Law Second, Torts, § 716, p. 50 (Tentative Draft No. 8, 1963) The American Law Institute said:

"A tradename or name identifying a business is entitled to protection against infringement, but only to the extent necessary to prevent confusion, mistake or deception of the public. More often than not, tradenames comprise such words as 'Company,' 'Corporation,' 'Incorporated,' and product names and geographical location names which make it difficult to establish distinctiveness or secondary meaning. The use of a given tradename will be enjoined if, but only if, it is shown that persons are dealing with one business when they intended and thought they were doing business with another. Tradenames which are dominated by a coined or made-up word may appear to receive wider protection than others, but this is because it is easier to make the showing of confusion in such cases.

"*b. Legal Theory for Protection and Function of Tradenames.*

"Since a tradename is a business name adopted and used by a business entity to identify the business, it involves the identity of the person conducting the business in the protection of his custom, in avoiding confusion between his business and other businesses, and in securing the benefits and advantages of good business reputation. It is protectible to the extent that the business goodwill which it identifies and symbolizes is protectible. It will be protected against use by another doing business in the same or substantially similar markets of a business name of such resemblance that the public is likely to confuse the two and find itself doing business with one firm when the other was intended.

" * * *

"The use of a tradename will be enjoined upon a showing that the name caused persons intending to deal with one person to deal with another. Since tradenames are not likely to be as well known to the public as trademarks, the likelihood of confusion between tradenames is lessened and the proof necessary for relief is difficult to obtain."

Also see King's of Boise, Inc. v. M. H. King Co., 88 Idaho 267, 398 P.2d 942 (1965); Cazier v. Economy Cash Stores, 71 Idaho 178, 228 P.2d 436 (1951); Charcoal Steak House of Charlotte, Inc. v. Staley, 263 N.C. 199, 139 S.E.2d 185 (1964); Fawcett Publications, Inc. v. Popular Mechanics Co., 80 F.2d 194 (3rd Cir. 1935); Fidelity Appraisal Co. v. Federal Appraisal Co., 217 Cal. 307, 18 P.2d 950 (1933); Anno. 150 A.L.R. 1067, 1125 (1943); 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition §§ 90 and 104; Cf. Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495 (2nd Cir. 1962); Blisscraft of Hollywood v. United Plastics Co., 294 F.2d 694 (2nd Cir. 1961); Lucien Lelong, Inc. v. Lander Co., 164 F.2d 395 (2nd Cir. 1947); Skinner Mfg. Co. v. General Foods Sales Co., 52 F.Supp. 432 (D.C.Neb.1943), aff'd 143 F.2d 895 (8th Cir. 1944).

■ See Federal Trade Commission v. Klesner, 58 App.D.C. 100, 25 F.2d 524 (1928) for the proposition that descriptive words are in the public domain and free for descriptive use by anyone as long as such users distinguish themselves by descriptive words, symbols, or otherwise from one who has established a secondary meaning thereto, or was already using the word.

■ The words "Farm Service" are also generic and descriptive of a business as used in "United States Steel Farm Service Center." Plaintiff contends that the two words "Farm Service" are too broad in meaning to describe a business and are thus not truly descriptive. We do not agree with this contention; the words "Farm Supplies" form a phrase almost equally broad in meaning. It would not seriously be contended that the words "Farm Supply" in "Joe's Farm Supply" would not describe Joe's business. Public policy weighs against monopolization of descriptive terms because of the danger of depleting the general vocabulary available to all for description and denomination of articles of commerce. Restatement of the Law, Torts, § 721, pp. 83, 84, Tentative Draft No. 8 (1963); Nims, Unfair Competition and Trademarks, § 201 (4th Ed. 1947); Vandenburgh, Trademark Law and Procedure, § 1.19 (1959); Derenberg, Trademark Protection and Unfair Trading, § 20 (1st Ed. 1936); Callman, The Law of Unfair Competition and Trademarks, § 71.1(a) (2nd Ed. 1950); Telechron, Inc. v. Telicon Corp., 198 F.2d 903, 906 (3rd Cir. 1952). Refusing to allow a merchant to reasonably describe his business could interfere with his right of free speech. See Jones v. Bontempo, 137 Ohio St. 634, 32 N.E.2d 17 (1941); People v. Osborne, 17 Cal.App.2d Supp. 771, 59 P.2d 1083 (1936). For this reason the courts have been very liberal in defining "descriptive" words. Words much broader in meaning and less inherently descriptive than "Farm

**590**

Service" have been called descriptive,[1] thus not subject to exclusive protection or registration. Thus, the words "Farm Service" being descriptive in nature, the trial court erred in finding that plaintiff had the right to exclusive use of those words together. United States Steel or any other is free to use the words "Farm Service" to describe its business operation so long as it reasonably distinguishes itself and its business from the plaintiff and its business so as to prevent reasonably discerning customers from confusing U. S. Steel and its business with plaintiff and its business. Charcoal Steak House of Charlotte, Inc. v. Staley, 263 N.C. 199, 139 S.E.2d 185, 188 (1964); Houston v. Berde, 211 Minn. 528, 2 N.W.2d 9 (1942); Singer Mfg. Co. v. June Mfg.

Co., 163 U.S. 169, 200, 16 S.Ct. 1002, 1014, 41 L.Ed. 118, 130 (1895); Cf. King's of Boise v. M. H. King Co., 88 Idaho 267, 398 P.2d 942 (1965); Vredenburg v. Safety Devices Corp., 270 Wis. 36, 70 N.W.2d 226 (1955); Cazier v. Economy Cash Stores, 71 Idaho 178, 191–192, 228 P.2d 436 (1951).

■ On remand it would be for the trial court to determine whether the defendant has reasonably distinguished itself and its business from that of the plaintiff. The standard to be used in such determination is the "reasonably discerning customer."

■ As we have heretofore noted, plaintiff's showing as to the possibility of irreparable injury was practically negatived by the showing it made in federal court in

1. For example, "Nu Grape" as a title for a grape beverage in National Nu Grape Co. v. Guest, 164 F.2d 874 (10th Cir. 1947); "Coco-Quinine" and "Quin Coco" as a name for a quinine and chocolate beverage, Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S.Ct. 615, 68 L.Ed. 1161 (1924); "Aviation" for the title of an aviation magazine, McGraw-Hill Pub. Co. v. American Aviation Associates, 73 App.D.C. 131, 117 F.2d 293 (1940); "Flexitized" as a name for a collar that could be moulded into a desired shape, Flexitized, Inc. v. Nat. Flexitize Corp., 335 F.2d 774 (2nd Cir. 1964); "Fine Line" to describe an automatic lead pencil, In re W. A. Sheaffer Pen Co., 158 F.2d 390, 34 CCPA 771 (1946); "Ruberoid" for a flexible waterproof roofing material, Standard Paint Co. v. Trinidad Asphalt Mfg. Co., 220 U.S. 446, 31 S.Ct. 456, 55 L.Ed. 536 (1911); "Dri-Fri" for a greaseless cooking oil, E. F. Drew & Co. v. Pam Industries, Inc., 299 F.2d 777 (7th Cir. 1962);

"Black Band" for coal, Black Band Consol. Coal Co. v. Glenn Coal Co., 57 App. D.C. 268, 20 F.2d 284 (1927); "E'clatant" for cotton goods with a satin finish, In re Bradford Dyeing Ass'n, 46 App. D.C. 512 (1917); "Oriental Cream" for a cosmetic lotion, In re Hopkins, 29 App.D.C. 118 (1907); "Junket" for a custard dessert, Charles Hansen's Laboratory v. Kirk, 12 F.Supp. 361, 364 (E.D. Pa.1935); "Shopper's Fair" for grocery supermarkets, Shopper's Fair of Arkansas v. Sanders Co., 207 F.Supp. 718 (W.D. Ark.1962); "Car Care" for an automobile repair and accessories business, Car Care, Inc. v. D. H. Holmes Co., (La.App.) 160 So.2d 272 (1964); "Home Beverage Service" for business that sold beverages at retail and delivered beverages to homes, Home Beverage Service v. Baas, 210 La. 873, 28 So.2d 481 (1946); "Auto Market" for car lot, Iowa Auto Market v. Auto Market & Exchange, 197 Iowa 420, 197 N.W. 321 (1924).

support of its motion to remand the cause to the state court. In addition to such a showing, it was incumbent upon plaintiff, seeking only an injunction, to show that it likely would prevail upon trial. Evans v. District Court, 47 Idaho 267, 275 P. 99 (1929); Southwestern Bell Tel. Co. v. State Corp. Com'n, 192 Kan. 39, 386 P.2d 515 (1963); Societe Comptoir De L'Industrie, etc. v. Alexander's Department Stores, Inc., 299 F.2d 33, 35, 1 A.L.R.3d 752 (2nd Cir. 1962); National Candle Co. v. Viscount Mfg. Co., 196 F.Supp. 204, 209 (D.N.J. 1961); Vredenburg v. Safety Devices Corp., 270 Wis. 36, 70 N.W.2d 226 (1955); Murray Hill Restaurant, Inc. v. Thirteen Twenty One Locust, Inc., 98 F.2d 578 (3rd Cir. 1938); Atlantic Monthly Co. v. Frederick Ungar Pub. Co., 185 F.Supp. 221 (S.D. N.Y.1960); Flintkote Co. v. Philip Carey Co., 13 F.2d 850 (7th Cir. 1926); Callman, The Law of Unfair Competition and Trademarks, § 88.3(a); 87 C.J.S. Trade-Marks, Trade-Names, and Unfair Competition § 210, p. 584.

▇▇▇ In addition to the showing that plaintiff's prospective injury was conjectural and that the defendant may have sufficiently distinguished itself and its business from the plaintiff and its business, within the scope of King's of Boise v. M. H. King Co., 88 Idaho 267, 398 P.2d 942 (1965),

we note that the finding of the trial court that plaintiff had established a secondary meaning for the words "Farm Service," is based solely upon testimony by officers of the plaintiff that they "thought" such a meaning had been established. As to secondary meaning, defendant showed that, in 1964, three companies of national scope— Swift & Co., V–C Chemical Co., and Texaco—made use of the words "Farm Service" to describe some of their operations; that eight local southern Idaho firms (four within plaintiff's trade area) used the words "Farm Service" in their names and advertising. In order to establish its claimed secondary meaning, it was incumbent upon plaintiff to rebut the evidence of use of the words "Farm Service" by such other firms, and show that it had established the claimed secondary meaning irrespective of such use by others. Cf. Dell Pub. Co., Inc. v. Stanley Publications, Inc., 9 N.Y.2d 126, 211 N.Y.S.2d 393, 172 N.E.2d 656 (Ct.App. 1961); Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569 (2nd Cir. 1959); Alan Wood Steel Co. v. Watson, 150 F. Supp. 861, 863–864 (D.D.C.1957); Crutcher v. Curtis Pub. Co., 138 F.Supp. 421, 423 (E.D.Pa.1956); National Fruit Product Co. v. Dwinell-Wright Co., 47 F.Supp. 499, 509 (D.Mass.1942); McGraw-Hill Pub. Co. v. American Aviation Associates, Inc., 73 App. D.C. 131, 117 F.2d 293, 296 (1940).

The order granting the preliminary injunction is reversed and the cause is remanded for further proceedings.

Costs to appellant.

McFADDEN, C. J., and McQUADE, SMITH and SPEAR, JJ., concur.