**FS SERVICES, INC., Plaintiff-Appellant,**

v.

**CUSTOM FARM SERVICES, INC.,**
**Defendant-Appellee.**

No. 71–1294.

United States Court of Appeals,
Seventh Circuit.

Argued April 7, 1972.

Decided Dec. 4, 1972.

Richard R. Trexler, Richard Bushnell and Caliste J. Alster, Chicago, Ill., for plaintiff-appellant.

Dean A. Olds, Richard H. Compere, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, PELL and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

Appealing from the district court's refusal to grant injunctive relief [1] for alleged trademark infringement and unfair competition, the plaintiff, FS Services, Inc. (FS), attacks the trial court's detailed findings of fact and conclusions of law, 325 F.Supp. 153, as unsupported by substantial evidence.

Plaintiff FS is an Illinois corporation organized as a farm cooperative selling a wide variety of farm oriented goods and services. Comprised of approximately 145 member companies, FS operates throughout Illinois, Iowa, and Wisconsin selling fertilizers, agriculture chemicals, livestock feeds, feeding equipment, field seeds, and petroleum products for farm equipment.

The defendant, Custom Farm Services (CFS), is a wholly owned subsidiary of the Cities Service Company specializing in the retail sales of the parent company's fertilizer and Ag chemicals. As a part of its sales program for these products, CFS offers farmers an advisory service which conducts extensive soil tests in order that fertilizers can be custom blended to the individual farmer's soil conditions. FS conducts a similar program. The two companies maintain substantially similar operations and compete for the same market in Illinois and Iowa.

The instant controversy involves the symbols employed by each party in its advertising and promotional activities. In 1956, Illinois Farm Supply Company, plaintiff's immediate predecessor, registered with the Office of Federal Trademark Registrations the FS mark currently employed by plaintiff. Since that time plaintiff has applied for and obtained eight separate registrations of the FS mark.[2] The FS mark is currently used not only to identify plaintiff's products but also to identify plaintiff's member businesses and the various services they offer.

While plaintiff's brief refers to its trademark as being shown in a circle design, and the Quaker Oats registry did show the letters FS in an unadorned circle, all of the registrations accomplished directly by plaintiff, and its entire field use, show the FS block letters encased in a bright red parallelogram as follows:

[A6820]

Defendant's mark used in connection with its business operations has the letters CFS in a circle, the margins of

1. In its complaint plaintiff sought both compensatory and punitive damages; however, "[b]ecause of the well recognized practical difficulties of proving specific monetary damages in cases of this type, plaintiff also waived such damages." (FS brief)

2. Plaintiff's immediate predecessor, Illinois Farm Supply Company, initiated the FS mark in 1955 in connection with its sales of fertilizer, chemicals, stock feeds, and seeds. Prior to incorporating the mark for use on all of plaintiff's products and services, a search of existing FS marks was conducted. That search revealed the existence of a prior registration of an FS mark for animal feeds by the Quaker Oats Company. Plaintiff negotiated for concurrent use of the FS mark within the market area, and, in 1967, purchased all of Quaker's interest in the registration. The F & S mark of the Felton-Sibley Company was also discovered, and an agreement was reached under which plaintiff agreed not to sell paints in the Felton-Sibley trade area. Since the inception of plaintiff's use of the FS parallelogram trademark, FS Services has engaged in extensive advertising and promotional activity resulting in expenditures in the area of $15,000,000.

which have oppositely extending arrows, an example thereof being as follows:

[A6821]

The CFS logotype customarily employs a red background with white letters and arrows. The evidentiary exhibits reflect that the mark is ordinarily accompanied by the epexegetic words, Custom Farm Services, Inc. Use of the mark began in July of 1965 in connection with defendant's sale of bulk blend fertilizer and agricultural chemicals. There is no indication that any attempt has been made to register this mark.

On March 21, 1967, plaintiff notified defendant of the alleged trademark infringement and urged the abandonment of the CFS mark. Custom Farm Services took the position that it was not infringing plaintiff's mark by the employment of the common letters FS in its mark since those letters had come to be recognized as descriptive designations for the words "farm services," "farm supply" or "farm store." Plaintiff then instituted this infringement proceeding at which it sought to prove that the alleged infringement had occasioned actual confusion in the public mind and particularly among the customers sought to be reached by plaintiff's advertising and promotional efforts. Having failed to convince the district court of the alleged confusion, plaintiff here attacks the detailed findings of fact and conclusions of law entered by the district court as being clearly erroneous and unsupported by substantial evidence.

■ We turn our attention first to the question of the relative strength of the FS mark. In doing so, we recognize the well-established distinction between strong and weak trademarks: the former merely requiring proof of a likelihood of confusion to establish infringement and the latter requiring proof of a strong secondary meaning in addition to proof of likelihood of confusion. See Westward Coach Manufacturing Co. v. Ford Motor Co., 388 F.2d 627 (7th Cir. 1968), cert. denied, 392 U.S. 927, 88 S. Ct. 2286, 20 L.Ed.2d 1386; 3 Callman, Unfair Competition and Trade-Marks § 69 (2d ed.). As this court noted in *Westward Coach Manufacturing Co., supra*, 388 F.2d at 634, quoting Callman:

"[T]he distinctiveness and popularity of the trademark will determine its relative strength or weakness and will accordingly define the scope of protection to be accorded the mark against the confusing similarity of others. A mark is strong if it is conspicuously distinctive; it is distinctive if the public has already been educated to accept it as the hallmark of a particular source. Then too, a mark can be distinctive either because it is unique, that is, distinctive in itself, because it has been the subject of wide and intensive advertisement, or because of a combination of both."

In the present case, we would have no difficulty in holding that plaintiff possessed a strong trademark in the red and black FS parallelogram motif. The FS symbol in the parallogram form has been the subject of extensive advertising compaigns and is widely recognized throughout the market area in question. That, however, is not at issue here for plaintiff is not seeking to prevent the use of the registered logo. Rather plaintiff seeks to prevent the use of a particular part of its symbol. The question before us is whether the letters F and S, used in colors and motif totally dissimilar to plaintiff's mark, are protected from use by anyone other than the plaintiff. Resolution of that question requires us to look beyond the distinctive FS parallelogram to determine the strength of plaintiff's mark.

We find that the letters FS do not constitute a strong mark where they are used without the parallelogram. Two separate factors impel us to this conclusion. Although the FS parallelogram is

clearly distinctive and carries with it a well-established secondary meaning denoting source of origin, the letters FS when used alone hardly qualify as inherently distinctive or unique. We find no basis for finding the public has been educated to accept the letters FS as a hallmark of a particular source. *Westward Coach, supra* at 634. Further, we agree with defendant that the letters FS have come to signify "farm service" or "farm supply," at least to the farmers within the area in which both parties do business. The words "farm service" or "farm supply" are descriptive or generic terms as to which public policy militates against monopolization of use. Farm Service, Inc. v. United States Steel Corp., 90 Idaho 570, 414 P.2d 898 (1966). See also American Aloe Corporation v. Aloe Creme Laboratories, Inc., 420 F.2d 1248 (7th Cir. 1970), cert. denied, 398 U.S. 929, 90 S.Ct. 1820, 26 L. Ed.2d 91 and 400 U.S. 820, 91 S.Ct. 37, 27 L.Ed.2d 47; Donald F. Duncan, Inc. v. Royal Tops Manufacturing Co., 343 F.2d 655 (7th Cir. 1965). Abbreviations for generic terms where they are generally recognized must be treated similarly.

█ We do not say that a weak mark is entitled to no protection. However, the party alleging infringement must establish, in addition to likelihood of confusion over the competing mark, that his mark, although weak, has attained a strong secondary meaning in the mind of the public. American Aloe Corp. v. Aloe Creme Laboratories, Inc., *supra*, 420 F.2d at 1251; John Morrell & Co. v. Reliable Packing Co., 295 F.2d 314 (7th Cir. 1961); Farm Service, Inc. v. United States Steel Corp., *supra*, 90 Idaho at 591–592, 414 P.2d 898. A secondary meaning exists when a party through advertising or massive exposure has established its mark in the minds of consumers as an indication of origin from one particular source.

█ Reviewing the record, we find that plaintiff failed to establish a secondary meaning with respect to the letters FS where they are depicted without the parallelogram motif. Other companies operated within the same general market area using the words "farm supply" and "farm service" or their abbreviations in their titles or marks.[3]

Plaintiff belittles defendant's evidence in this respect as not involving entrepreneurs who are competitive with the parties in the present litigation, either time- or geography-wise. Further, plaintiff contends that a failure on its part to attempt to stop other alleged infringers is no justification for unfair competition by the defendant. We attach significance to this evidence not for the reasons challenged by the plaintiff but because of its supportive confirmation that "farm supply" and "farm services" are not uncommon nor unusual generic descriptive terms applicable to businesses catering to farmers. Plaintiff does not contend, as we read the record, that it has any exclusive right to these generic terms. Yet, in essence, we are asked to accord exclusivity to the letters representing abbreviations of the same terms. That these are merely abbreviations of the defendant's corporate name is demonstrated by the luculent use of that name accompanying the CFS symbol.

In addition, plaintiff's own member companies operate under individual designations which variously employ "farm service," "service," "farm supply" or "supply" in their titles. For example, among plaintiff's member companies we

3. The defendant adduced evidence of third party marks employing the letters FS as descriptive abbreviations for the generic terms "farm service," "farm supply" or "farm store." Among these third party uses was the F. S. Royster Company's mark employing the letters FSR prominently in its mark, the Trowbridge Farm Supply Co., using the letters TFS, and the Feed Service Corp., using the letters FSC. In addition, the United States Department of Agriculture employs the letters FCS, an abbreviation for Farmer's Cooperative Service, to identify its agricultural publications.

find the names Lake-Cook Farm Supply, Jersey Co. Farm Supply Co., Farm Supply Services, Inc., Marshall Farm Service, Northeast Farm Service, and Moravia Farm Service. Thus, it would appear that plaintiff, rather than striving for the creation of a strong secondary meaning for the letters FS in the public's mind, has strengthened the descriptive, generic connotation of the letters by using them interchangeably in the names of its member companies. Under such circumstances, we do not find that plaintiff has established a strong secondary meaning with respect to the letters in its mark.

Further, as to the question of likelihood of confusion, an essential element of an infringement action, 15 U.S. C. § 1114(1), Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609, 611 (7th Cir. 1965), we hold that the trial judge's finding that the "plaintiff . . . failed to prove [by] a preponderance of competent and credible evidence that there · [was] a likelihood of confusion" was not clearly erroneous. At trial, plaintiff sought to prove customer confusion between the parties' mark by offering the results of a survey of local CFS plant managers conducted by the defendant. Prior to trial, CFS had directed inquiries to 91 of its managers in Illinois and Iowa asking whether they had experienced customer confusion between plaintiff's member companies and defendant. Approximately 15% reported varying degrees of confusion. Plaintiff conducted a similar survey of its plant managers and unsuccessfully sought to introduce the results at trial. Plaintiff complains that the trial judge erred both in failing to accord the reports of defendant's managers adequate weight and in excluding plaintiff's survey.

Although having some apparent doubts about the admissibility of the reports to CFS because of hearsay contained in them, the district court, treating these as in the nature of admissions, did permit them in evidence. He correctly gave them little probative value.

The significant finding of fact by the district court, and one which we cannot say was clearly erroneous, is that there was no evidence of confusion attributable to the trademarks in issue. As we have already indicated, plaintiff's products were sold through its members who in their business names had some variant of the generic terms represented by the abbreviation FS. A substantial majority of these local businesses known to be supplying the farmer market contained the word "service," the same word which appears in defendant's corporate name. If there had been no marks here, confusion such as incorrect deliveries or telephone calls which did occur, would have been inevitable. Such confusion, however, was not shown to have resulted from the mark FS. "A new competitor is not held to the obligations of an insurer against all possible confusion. He is not obligated to protect the negligent and inattentive member of the public from confusion resulting from indifference." Life Savers Corp. v. Curtiss Candy Co., 182 F.2d 4, 8 (7th Cir. 1950).

The district court refused to admit into evidence, on the basis of hearsay objections, the evidence of confusion contained in the deposition testimony of employees of plaintiff or its member companies. Plaintiff disputes the hearsay characterization. Some of the proffered testimony would seem arguably to be of that category, although some is not. All of the testimony, however, was along the same line as that which was admitted. Since we would hold that it had no probative value if it had been admitted, we find no error in the exclusion. Swift & Company v. Southwest Fertilizer & Chemical Company, 271 F.2d 268, 269, 47 C.C.P.A. 715 (1955).

Count I of plaintiff's complaint was based on trademark infringement and Count II on unfair competition. Since the second count had to find its support in some aspects of the factual situation needed for the validity of the first count, proof of which we have found de-

ficient, we do not find reversible error on the latter count. We have examined the other contentions of plaintiff and find no basis therein for reversal.

 Apparently this is another one of those cases where the findings of fact and conclusions of law were prepared by the prevailing party and were adopted verbatim by the district court. While this procedure does not invalidate the findings, it frequently does result in some blurring of focus on the critically material facts. This may well result from overly zealous counsel efforts to be sure that everything possible is in. Findings of fact, however, are no place for the kitchen sink. The district court should exercise an astucious editorial pen on counsel-submitted findings. There may be some surplusage in those we are reviewing. We find, however, that the material facts are set forth, that they are not clearly erroneous, and that the law applicable thereto was correctly concluded.

For the reasons herein set forth, the judgment of the district court is affirmed.

Affirmed.